In re F/S AIRLEASE II, INC.

v.

Lewis SIMON and S–J
Financial Corporation.

F/S AIRLEASE II, INC.

v.

GREYCAS, INC.

F/S AIRLEASE II, INC.

v.

SWIG INVESTMENT COMPANY.

Bankruptcy No. 84–1628.
Civ. A. Nos. 86–1047, 86–1048
and 86–1050.

United States District Court,
W.D. Pennsylvania.

Oct. 21, 1986.

Thomas S. Galey (argued), Pamela J. Giarla, Pittsburgh, Pa., for F/S AirLease II, Inc.

Jack Weinberg (argued), Graubard Moskovitz Dannett Horowitz & Mollen, New York City, Kirkpatrick & Lockhart, Pittsburgh, Pa., for the Swig Investment Company Aircraft Trust No. 1, George M. Cheever, Stoddard D. Platt, Robert K. Gross, of counsel.

Alan M. Epstein (argued), Kelley Drye & Warren, New York City, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for Greycas, Inc.

Philip J. Nathanson (argued), Kasdin & Nathanson, Chicago, Ill., Dickie, McCamey

& Chilcote, Pittsburgh, Pa., for Lewis Simon and S–J Financial Corporation.

## MEMORANDUM OPINION

ZIEGLER, District Judge.

Debtor and two creditors appeal the bankruptcy court's approval and award of $450,000.00 to Lewis Simon and S–J Financial Corporation, appellees, for professional services rendered in obtaining a lease for debtor's Boeing 737–222 aircraft. Appellants argue that the bankruptcy court's *nunc pro tunc* approval is contrary to applicable law in this jurisdiction and that the court's award is unreasonable and not supported by evidence of record. We hold that appellees are entitled to *nunc pro tunc* approval, but we shall remand the case for a documented determination of appellees' claims.

### I. History of Case

Appellees do not dispute the bankruptcy court's findings of fact. Our independent review of the record indicates that the findings are not clearly erroneous and are substantially supported by the weight of credible evidence. For the purposes of this appeal, we adopt the following findings of the bankruptcy court, as reported in *Matter of F/S Airlease II, Inc.*, 59 B.R. 769, 771–72 (Bankr.W.D.Pa.1986):

"The Debtor is a single-asset corporation, which has the sole purpose of leasing and remarketing a certain Boeing 737–222 aircraft. This aircraft was purchased by the Debtor in July of 1980, and financing for the purchase was obtained from Greycas, Inc. (debtor's largest single creditor). The aircraft was subsequently sold and repurchased several times, the final purchaser being the Swig Investment Company Aircraft Trust No. 1 ("Swig"). Swig subsequently leased the aircraft to the Debtor for an 18–year term. At all times, Greycas continued to hold a security interest and was to be repaid from the rental proceeds received as a result of the Debtor's releasing of the aircraft.

"In February of 1980, the Debtor entered into an initial agreement with S–J, hiring it as a leasing agent to find leases for various aircrafts. In July of 1980, S–J successfully arranged for the lease of the Boeing 737–222 aircraft to Air Florida. Soon thereafter, a disagreement arose between the Debtor and S–J as to the appropriate compensation due S–J for its services. Litigation was instituted in the United States District Court for the Northern District of Illinois, which ultimately was resolved by a Settlement Agreement dated May 27, 1983. This Agreement directed that S–J would be entitled to compensation in the amount of one-half of one month's rent for each year of releasing, and would give S–J the remarketing rights to this and other aircraft, subject to the rights of the various owners and secured lenders. Additionally, the Settlement Agreement stated that S–J had a right to payment only when the Debtor received payment.

"On July 3, 1984, Air Florida, the lessee of this aircraft, filed a Chapter 11 bankruptcy, which effectively terminated the aircraft lease, leaving the aircraft available for release or sale. The Debtor immediately contacted S–J, urging it to assist in the search for a new lessee. On July 20, 1984, S–J sent a letter to the Debtor proposing to remarket the aircraft for a flat fee of $100,000.00 plus expenses, irrespective of the new lease terms. On July 30, 1984, S–J forwarded a second letter to the Debtor, again offering to act as the leasing representative for the $100,000.00 flat fee, plus expenses. S–J specified that it needed a response by August 3, 1984. On August 21, 1984, almost three (3) weeks after the expiration date, the Debtor wrote to S–J, accepting the proposed arrangement. This acceptance was conditioned upon the approval of Swig. Swig, for unspecified reasons, categorically refused to approve any flat fee arrangement, and accordingly that offer was terminated. Only now, after S–J has procured a 10–year lease and requested $450,000.00, has Swig inferred that the Court should imposed the $100,000.00 fee upon S–J.

"On July 25, 1984, S–J and representatives for the Debtor traveled to Phoenix, Arizona, Greycas' headquarters, to discuss possible leasing of this aircraft to America

West Airlines ("America West"). This joint trip was the result of several meetings among the Debtor, S–J, and Greycas, during which time the possibilities of various leases and lessees were discussed. Greycas' proposal to lease the aircraft to America West was contingent upon Greycas obtaining possession of the aircraft, which possession it did not have, and could not have, pursuant to final court order.

"With a general understanding as to professional fees but no finalized written agreement between them, the Debtor requested that S–J proceed with attempts to remarket the aircraft. At that time the aircraft was not airworthy, in that one of its engines had been removed and was placed, disassembled, in a box. Since the aircraft was not airworthy, it was providing no revenue to any of the parties. In September of 1984, Greycas made a proposal to America West which called for a 6–month lease with a 10–year option. The monthly rental fee proposed was $85,-000.00. Additionally, since the aircraft was missing an engine, Greycas proposed to have America West lease an engine and subtract the cost of the leased engine from the monthly rental payments. Again, this proposal was contingent upon Greycas' receipt of the aircraft which it did not and could not obtain.

"By October 25, 1984, S–J had procured a Letter of Agreement with Aloha Airlines ("Aloha"). The Agreement called for a 10–year lease at a monthly rental of $90,-000.00. Further, Aloha, a more solvent and stable airline, agreed to supply the necessary second engine, without receiving a rent rebate thereon, and also agreed to return the aircraft at the conclusion of the 10–year lease with two operational engines instead of one.

"On November 29, 1984, the Debtor and Aloha prepared a lease based on the agreement procured by S–J. The following day, an Order was entered in [bankruptcy] Court approving this lease, finding it to be in the best interests of the estate. At that hearing the parties made the Court aware that the Debtor had requested S–J to procure a lease, that S–J had procured same,

and that Greycas, while nominally objecting to S–J's involvement, wanted the lease, secured by S–J, to be approved."

The bankruptcy court cited the general rule that court authorization before services are rendered is a condition precedent to any fee application, citing Bankruptcy Rule 2014(a) and *In re Hydrocarbon Chemicals, Inc.*, 411 F.2d 203 (3d Cir.1969). However, the court noted, a bankruptcy court exercises powers of a court in equity and equitable principles favor *nunc pro tunc* approval of fee applications in certain extraordinary cases. In a well-crafted opinion, Judge Markovitz found that S–J qualified as a professional person under 11 U.S. C. § 327, that S–J exercised a high degree of skill and expertise in arranging the lease with Aloha, that failure to apply for court approval before S–J rendered its services to debtor was not the fault of S–J, and that S–J had no interest adverse to debtor to bar equitable *nunc pro tunc* approval. The court then considered the commercial reasonableness of the requested $450,-000.00 fee based upon expert testimony of the value of the Aloha lease to debtor and standard fees in the aircraft leasing industry. The court awarded the requested compensation of $450,000.00.

## II. Discussion

Two basic issues have been presented on appeal. First, appellants argue, S–J and Lewis Simon are not entitled to *nunc pro tunc* approval because they cannot satisfy the statutory requirements of 11 U.S.C. § 327(a) and have not presented the required extraordinary circumstances to justify such approval. The second issue is whether the award to appellees was documented sufficiently and was reasonable.

### A. *Nunc Pro Tunc* Approval

The Court of Appeals recently held that bankruptcy courts have the power to authorize retroactive employment of counsel and other professionals under their broad equity power. *In the Matter of: Arkansas Company, Inc.*, 798 F.2d 645, 648 (3d Cir. 1986). As the court stated, at 648: "Where equitable concerns weigh in favor of granting retroactive approval to enable deserv-

ing professionals to recover compensation for work actually done, we see nothing in the statute that denies the bankruptcy court the power to grant such retroactive approval."

However, the court limited retroactive approval to certain extraordinary cases because "a lenient [retroactive approval] rule would subvert Congress' purposes in imposing a prior approval requirement." *Id.* at 648. The term, "extraordinary circumstances," was defined as "cases where prior approval would have been appropriate and the delay in seeking approval was due to hardship beyond the professional's control." Id. at 650.

The court then summarized the test to be applied in determining whether *nunc pro tunc* approval is warranted. The bankruptcy court first must determine whether the applicant qualifies as a professional person under the statutory provisions of 11 U.S.C. §§ 327(a) and 1103(a). Such a determination, to be made after a hearing, entails a finding that the applicant is disinterested and without an adverse interest and that the services performed were necessary under the circumstances. *Id.* at 650. Our review of this determination is plenary. Second, the bankruptcy court, "in exercising its discretion," must determine whether the particular circumstances of the case excuse the failure of prior approval. *Id.* at 650. Our review of this determination is limited to an abuse of discretion standard.

■ Section 327(a) permits the trustee to employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's statutory duties. Appellant debtor argues that Lewis Simon and S–J were not employed as "professional persons" within the meaning of section 327(a) because appellees were creditors of debtor when the bankruptcy petition was filed.

The bankruptcy court found that appellees were not creditors of debtor. Reviewing the May 27, 1983, settlement agreement between debtor and S–J, the court determined that the agreement expired by its own terms before the bankruptcy petition was filed, and that debtor had no cause to list S–J as a creditor based on an agreement no longer binding on the parties. Our review of the agreement and evidence of record indicates that the court's finding is not erroneous. The agreement was based on the leasing of the Boeing aircraft to Air Florida, Inc. *See* paragraph 1 of the agreement, Appendix B to Memorandum of Swig Investment Company. As the bankruptcy court found, the July 3, 1984, bankruptcy filing by Air Florida effectively terminated the aircraft lease, and S–J and Lewis Simon were no longer creditors under the May 1983 agreement. S–J continued to seek a lessee for the aircraft at debtor's request. At the time of debtor's filing on August 3, 1984, no lease had been obtained.

■ The issue of law facing the bankruptcy court was whether S–J acted as a retained professional under section 327(a) after August 3, 1984. We agree with the lower court that appellees qualify as "professional persons" within the meaning of section 327(a). S–J and Lewis Simon were experienced in arranging leases for aircraft; they set up a lucrative, long-term lease with Aloha Airlines, a reputable airline; and they were able to obtain the lease despite the fact that the Boeing aircraft was not airworthy at the time. We further agree that appellees were retained by debtor following its August 3, 1984, bankruptcy petition filing. As the bankruptcy court correctly found, debtor retained appellees to locate a lessee for the aircraft under two agreements, dated August 13 and 21, 1984. Tr. at 11; Exhibits F and G to Affidavit of Fred Pink, vice president of Greycas, Inc. We also agree that retention of appellees was "reasonably necessary in the administration of the estate" and "necessary for the protection and benefit of the estate." 2 *Collier on Bankruptcy,* ¶ 327.01 (1986). Appellant Greycas, which held a security interest in the aircraft, attempted to arrange a lease for the aircraft after Air Florida filed for bankruptcy. However, Greycas's deal with America West Airlines

was thwarted because Greycas could not legally obtain possession of the aircraft. The only lease effort to bear fruit was by S–J which, in November 1984, arranged a 10–year lease with Aloha at a monthly rental rate of $90,000.00. As the bankruptcy court noted: "Further, it must be realized that the total amount brought into the estate by this lease, which is $10,800,000.00 over the course of the 10–year lease, is the sole asset of the Debtor's estate. Were it not for the efforts of S–J in obtaining this lease, there would be no estate with which a reorganization could be effected." *In the Matter of F/S Airlease II, Inc., supra,* at 777.

■ The second part of the *Arkansas Company* test for *nunc pro tunc* approval is whether the particular circumstances in the case adequately excuse the failure of prior approval. As rehearsed, our review is limited to the question of whether the bankruptcy court abused its discretion in excusing the failure. According to the Court of Appeals, the bankruptcy court must consider the following factors: "whether the applicant or some other person bore responsibility for applying for approval; whether the applicant was under time pressure to begin service without approval; the amount of delay after the applicant learned that initial approval had not been granted; the extent to which compensation to the applicant will prejudice innocent third parties; and other relevant factors." *Arkansas Company, supra,* at 650. In *Arkansas Company,* the court held that *nunc pro tunc* approval was not warranted because the petitioner was a law firm with experienced bankruptcy practitioners who were aware of the need to apply for prior approval of fees. The *Arkansas Company* court, however, noted that failure to seek court approval may be excused where the professional justifiably relied on another party to obtain court approval (citing *In re Freehold Music Center,* 49 B.R. 293 (Bankr.D.N.J.1985)).

In the instant case, Judge Markovitz aptly characterized testimony as showing that S–J had requested assurance that its services would be permitted by the bankruptcy court and that it was reassured by debtor's officers that appropriate measures would be taken. Further, the court noted, "the Debtor's president testified that no application was made to this Court through an *oversight on the part of the Debtor." In the Matter of F/S Airlease II, Inc., supra,* at 775 (emphasis in original). This finding, coupled with other lower court findings that S–J and debtor operated under severe time pressures to locate another lessee for the aircraft and that S–J's successful efforts resulted in profit not prejudice for third parties, indicates that the bankruptcy court did not abuse its discretion in excusing the prior failure to seek approval for S–J's services.

### B. Amount of Award

Finding that the fee requested by S–J was fair and reasonable in light of the value conferred on debtor, the bankruptcy court awarded $450,000.00 to S–J. Appellants argue that S–J's petition for fees is woefully inadequate under bankruptcy procedural rules and does not adequately support the requested award. Appellees rejoin that debtor had admitted that $450,000.00 was owed to S–J as an administrative claim and expense, according to a letter debtor sent to Greycas and other parties.

Under the Bankruptcy Code, the court may award compensation to a professional employed under section 327 "for actual, necessary services rendered by such ... professional person ... based on the time, the nature, the extent, and the value of such services and the cost of comparable services...." 11 U.S.C. § 330(a)(1). According to Bankruptcy Rule 2016(a), such compensation may be awarded only after the professional files an application with the court "setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested."

■ The Code requires a detailed statement so that the court can determine an award both compensating petitioner for its services and protecting debtors and creditors. The fact that debtor represented that $450,000.00 was appropriate compensation does not abrogate the court's duty to pro-

tect creditors such as Greycas and Swig. Also, expert testimony that $450,000.00 is a reasonable award in light of the benefit conferred by S–J on debtor does not satisfy the requirements of Rule 2016(a).

We shall vacate the award and remand the case to the bankruptcy court, with directions to require S–J to file an application satisfying Rule 2016(a) and to hold a hearing on the application. In so ruling, we urge the parties to bridle their propensity for burdening the court with unnecessary and irrelevant papers and motions. The only matters to be determined upon remand are the documentation of S–J's time and expenses in obtaining the Aloha lease and the reasonable value therefor.[1]

The final argument raised by Greycas in this appeal, *i.e.*, that S–J cannot properly charge Greycas's collateral for payment of its compensation, was resolved properly by the bankruptcy court.

### III. Summary

Because S–J and Lewis Simon qualify as professional persons under 11 U.S.C. § 327(a) retained by debtor to perform necessary services following its bankruptcy petition filing and because the bankruptcy court did not abuse its discretion in excusing the failure to seek court approval before appellees rendered services, *nunc pro tunc* approval of compensation is warranted under the law of this circuit. *In re Matter of: Arkansas Company, Inc., supra.* Because appellees' application for fees lacks the required specificity under the Bankruptcy Code, the award will be vacated and the case remanded for an amended application and a hearing on the reasonableness of the newly documented fees.

A written order will follow.

### ORDER OF COURT

AND NOW, this 21st day of October 1986,

IT IS ORDERED that the bankruptcy court's *nunc pro tunc* approval allowing compensation to appellees-petitioners be and hereby is affirmed;

IT IS FURTHER ORDERED that the bankruptcy court's award of $450,000.00 be and hereby is vacated and the case remanded to the bankruptcy court for an amendment of the fee petition to conform to Bankruptcy Rule 2016(a) and for a hearing thereon.

---

1. We recognize that some expenses of negotiating the aircraft lease with Aloha Airlines were incurred by S–J and Lewis Simon before debtor's bankruptcy petition was filed. Although the argument has not been raised by appellants, we foresee an issue as to whether appellees are entitled to compensation for work performed before they were retained under 11 U.S.C. § 327. This issue is properly reserved for determination by the bankruptcy court upon remand.