844 F.2d 99
 18 Collier Bankr.Cas.2d 959, 17 Bankr.Ct.Dec. 734,
Bankr. L. Rep. P 72,242
 In re F/S AIRLEASE II, INC.
v.
Lewis SIMON and S-J Corporation Greycas, Inc.
Appeal of The SWIG INVESTMENT COMPANY AIRCRAFT TRUST NO. 1,
one of the creditors above named in this
bankruptcy proceeding (Three Cases).
Appeal of F/S AIRLEASE II, INC., appellant-debtor above
named (Three Cases).
Appeal of Lewis SIMON and S-J Financial Corporation (Three Cases).
In re F/S AIRLEASE II, INC.
v.
GREYCAS, INC.
F/S AIRLEASE II, INC.
v.
SWIG INVESTMENT COMPANY, Greycas, Inc., Appellants in No. 86-3714.
 Nos. 86-3712 to 86-3720, and 86-3731 to 86-3733.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 9, 1987.
Decided March 21, 1988.
Rehearing and Rehearing In Banc Denied
April 19, 1988.
 
 Thomas S. Galey (argued), Pamela J. Giarla, Pittsburgh, Pa., for F/S AirLease II, Inc.
 Jack Weinberg (argued), Graubard, Moskovitz, Dannett, Horowitz & Mollen, New York City, Kirkpatrick & Lockhart, Pittsburgh, Pa., (George M. Cheever, Stoddard D. Platt, Robert K. Gross, of counsel), for the Swig Inv. Co. Aircraft Trust No. 1.
 Alan M. Epstein (argued), Kelley Drye & Warren, New York City, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for Greycas, Inc.
 Philip J. Nathanson (argued), Kasdin & Nathanson, Chicago, Ill., Dickie, McCamey & Chilcote, Pittsburgh, Pa., for Lewis Simon and S-J Financial Corp.
 Before SLOVITER and STAPLETON, Circuit Judges, and FISHER, District Judge.*
 OPINION OF THE COURT
 SLOVITER, Circuit Judge.
 
 
 1
 The debtor in a Chapter 11 bankruptcy and its two principal creditors appeal from an order of the district court affirming the bankruptcy court's nunc pro tunc appointment of a broker for professional services rendered to debtor. The broker cross-appeals from that portion of the district court's order vacating the bankruptcy court's monetary award and remanding the case to the bankruptcy court for recalculation of the amount due the broker. We must first decide whether we have jurisdiction. If so, we will reach the issue whether this case presents such "extraordinary circumstances" as set forth in In re Arkansas, 798 F.2d 645 (3d Cir.1986), to warrant non-compliance with the prior approval rule of section 327(a) of Chapter 11 of the Bankruptcy Code.
 
 I.
 Facts
 
 2
 F/S AirLease II, Inc. is a Delaware corporation engaged solely in the business of buying, selling, financing, and leasing a Boeing airplane. It purchased that plane in 1980 and then leased it to Air Florida for a ten-year term. Greycas, Inc. provided the financing for that transaction; its interest in the plane was secured by a first mortgage, and Greycas also was entitled to an assignment of rental proceeds from the Air Florida lease as partial security. In 1980, AirLease sold the plane to Comet Leasing Corporation, which then sold it to Swig Investment Company, which in turn leased it back to AirLease for an eighteen-year term. These transactions were each carried out subject to Greycas' security interest.
 
 
 3
 The Air Florida lease had been negotiated and procured for AirLease by Lewis Simon, a broker who does business through S-J Financial Corporation (collectively referred to as "Simon"), and who performed brokerage services for AirLease's affiliated companies as well. As a result of a dispute over commissions, Simon sued AirLease's parent corporation to obtain commissions allegedly due for, inter alia, his brokerage services in obtaining the Air Florida lease. A settlement agreement was reached in May of 1983 which gave Simon "the exclusive right to remarket" the Boeing aircraft, subject to the rights of the owner and other creditors, for a commission of one-half of one month's rent for each year of the re-leasing term, net of expenses.
 
 
 4
 In July 1984, Air Florida filed for bankruptcy under Chapter 11 of the Bankruptcy Code, thereby terminating its lease with AirLease and depriving AirLease of its sole source of income to satisfy its obligations to Swig and Greycas. According to an appraisal conducted at that time by AirLease's appraiser, the plane, which was missing one of its two engines, was valued at $5,242,000 and would require $763,500 worth of repairs to restore it to an airworthy condition.
 
 
 5
 Upon Air Florida's bankruptcy, AirLease immediately contacted Simon and enlisted his services for the remarketing of the plane. In response, on July 20, 1984, Simon wrote a letter to AirLease's Vice President and Treasurer, offering to remarket the plane for a flat fee of $100,000, net of expenses, "in lieu of the re-leasing fee set forth in [the May 1983 settlement agreement]." App. at 1664. This letter also requested a $20,000 advance from AirLease to cover expenses. On July 23, 1984, AirLease responded with a letter proposing additional terms and enclosing both a check for $20,000 and an escrow agreement.
 
 
 6
 In a second letter to AirLease, dated July 30, 1984, Simon confirmed that he would undertake to remarket the plane for a $100,000 flat fee. Simon also stated that he understood that AirLease would use its best efforts to obtain Swig's agreement to pay him the $100,000 fee if he was successful in releasing the plane. Simon made this offer on the condition that he be notified of Swig's decision by August 3, 1984. AirLease accepted Simon's July 30, 1984 offer on August 21, 1984, but apparently Swig did not consent to this arrangement.
 
 
 7
 On August 3, 1984, AirLease filed a voluntary bankruptcy petition under Chapter 11 of the Bankruptcy Code. Greycas, the first mortgagee, asserted that it had a right to possession of the plane; on August 30, 1984, the bankruptcy court enjoined Greycas from instituting any action to obtain possession of the plane other than in AirLease's bankruptcy proceedings. The bankruptcy court subsequently awarded possession of the plane to AirLease and Greycas jointly.
 
 
 8
 Throughout the months of September and October 1984, Simon attempted to remarket the plane. At this time Greycas also was attempting to secure a new lessee, and Greycas did, in fact, make a proposal to America West Airlines which did not culminate in an agreement.
 
 
 9
 Thereafter, Simon reached an agreement with Aloha Airlines, which was memorialized in a letter agreement dated October 25, 1984, and finalized in a lease agreement at the end of November. That agreement provided for a ten-year lease term, with monthly rental payments of $90,000. The agreement further provided that Aloha would furnish the necessary engine at its own expense, and would return the plane to AirLease at the end of the lease term with two operable engines. The deal was contingent on the lease being executed by mid-December 1984, because the December holiday season was Aloha's busiest time.
 
 
 10
 AirLease quickly filed a motion in the bankruptcy court for approval of the lease to Air Florida. On the day before the bankruptcy court was to hold a hearing on the motion, counsel for Simon, in a letter dated November 28, 1984 to counsel for AirLease, confirmed his understanding reached in a telephone conversation between them that day that in the forthcoming bankruptcy court hearings AirLease would not seek to obtain any ruling from the bankruptcy court "regarding the distribution or allocation of the proceeds from the Aloha Airlines lease," but, rather, would only seek approval of the lease itself. App. at 792. The issue of "allocation and distribution of the payment derived from the lease [was to] be resolved at a later date." However, Simon understood that AirLease would "spread of record and include in any order approving the lease the fact that [Simon] initiated, procured and negotiated the Aloha Airlines lease." App. at 792.
 
 
 11
 After two days of hearings held on November 29 and 30, 1984, at which AirLease "spread of record" Simon's role in the transaction, the bankruptcy court approved the Aloha lease over Greycas' objections, finding it to be in the estate's best interests. Simon testified at the hearing about the lease; however, he did not seek his appointment as broker or approval of his services at that time. Rather, as Simon and AirLease had agreed, the sole issue raised at that hearing was the confirmation of the lease.
 
 
 12
 In June 1985, ten months after he began his efforts to remarket the plane and seven months after the Aloha lease was executed and approved by the bankruptcy court, Simon filed a petition in the bankruptcy court for payment of administrative expenses pursuant to 11 U.S.C. Sec. 503 (1982 & Supp. IV 1986). He requested $450,000, which amounted to one-half of one month's rent for each year of the Aloha lease. The bankruptcy court approved his employment nunc pro tunc and awarded him the $450,000 fee he requested. In re F/S AirLease II, Inc., 59 B.R. 769 (Bankr.W.D.Pa.1986).
 
 
 13
 AirLease, Greycas, and Swig appealed to the district court which affirmed the nunc pro tunc approval of Simon's appointment but vacated the $450,000 award, finding the amount to be insufficiently substantiated. The district court therefore remanded the case to the bankruptcy court on the issue of the amount of the award. In re F/S AirLease II, Inc., 84 B.R. 389 (W.D.Pa.1986). These appeals followed.[1]
 
 
 14
 We review the bankruptcy court's ruling by the same standards the district court should apply. Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 102 (3d Cir.1981). District court review of the bankruptcy court's factual findings is under the "clearly erroneous" standard. See In re Baron v. Allied Artists Pictures Corp., 717 F.2d 105 (3d Cir.1983); see also Universal Minerals, 669 F.2d at 102. A decision to grant nunc pro tunc approval is in the discretion of the bankruptcy court, see Arkansas, 798 F.2d at 650, and is reviewed for abuse of discretion only. We have plenary review over legal questions. See Universal Minerals, 669 F.2d at 102.
 
 II.
 Appealability
 
 15
 All parties construe 28 U.S.C. Sec. 158(d) (Supp. III 1985)[2] as giving us jurisdiction. We are obliged, however, in every appeal presented to us to satisfy ourselves not only of our jurisdiction but also of the jurisdiction of the lower court. Bender v. Williamsport Area School District, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986); see also In re Walsh Trucking Co., 838 F.2d 698 (3d Cir.1988).
 
 
 16
 Courts of appeals have jurisdiction over appeals in bankruptcy cases in which district courts have entered "final decisions, judgments, orders, and decrees." 28 U.S.C. Sec. 158(d); see In re Brown, 803 F.2d 120, 122 (3d Cir.1986). District courts, on the other hand, have jurisdiction not only over such final judgments but also, "with leave of the court," over interlocutory orders and decrees. 28 U.S.C. Sec. 158(a). In this case, no motion was filed for leave to appeal an interlocutory order, see Bankruptcy Rule 8001(b), and thus it appears that the district court and the parties treated the bankruptcy court's order as final.
 
 
 17
 The unique characteristics of bankruptcy cases have led us to "consistently consider[ ] finality in a more pragmatic and less technical way in bankruptcy cases than in other situations." In re Amatex Corp., 755 F.2d 1034, 1039 (3d Cir.1985).[3] We have explained that "[b]ankruptcy cases frequently involve protracted proceedings with many parties participating. To avoid the waste of time and resources that might result from reviewing discrete portions of the action only after a plan of reorganization is approved, courts have permitted appellate review of orders that in other contexts might be considered interlocutory." Id. at 1039. The factors that we have considered in making a decision on finality have included the impact of the matter on the assets of the bankruptcy estate, the preclusive effect of a decision on the merits, and whether the interests of judicial economy will be furthered. See, e.g., In re Meyertech, 831 F.2d 410, 414 (3d Cir.1987).
 
 
 18
 Applying these factors, we have found the requisite finality in an order denying a right to appoint a legal representative for potential future claimants, In re Amatex Corp., 755 F.2d at 1039-41; an order lifting the automatic stay of the bankruptcy code, In re Comer, 716 F.2d 168, 171-74 (3d Cir.1983); an order staying proceedings pending action by a state agency, Wheeling-Pittsburgh Steel Corp. v. McCune, 836 F.2d 153, 157-58 (3d Cir.1987); an order denying the creditors' motion to dismiss the debtor's Chapter 7 petition, In re Christian, 804 F.2d 46, 47-48 (3d Cir.1986); and an order granting a creditors committee leave to intervene in an adversary proceeding brought by the bankruptcy trustee in a Chapter 11 proceeding, In re Marin Motor Oil, Inc., 689 F.2d 445, 447-49 (3d Cir.1982), cert. denied, 459 U.S. 1207, 103 S.Ct. 1196, 75 L.Ed.2d 440 (1983). See also In re Walsh Trucking Co., 838 F.2d 698, 699-701 (3d Cir.1988) (applying the same analysis to appeals from the bankruptcy court to the district court).
 
 
 19
 Application of this approach leads to our conclusion in this case that the orders of both the bankruptcy court and the district court granting nunc pro tunc approval of Simon's employment as a broker were final. See In re Arkansas, 798 F.2d 645 (3d Cir.1986) (assuming without discussion that a bankruptcy court order, affirmed by the district court, denying nunc pro tunc approval of employment of a law firm under 11 U.S.C. Sec. 327(a) was appealable).
 
 
 20
 A resolution of this discrete dispute at this time would further the goal of judicial economy because it could obviate the need for further action by the bankruptcy court. Even more important, the order has a significant impact on the assets of the bankruptcy estate; the amount Simon seeks represents a substantial portion of the assets of the estate, and an award to him at this point will severely affect the rights of the other creditors. In fact, a delay in the final resolution of this matter could have an adverse impact on the debtor's successful reorganization under Chapter 11. In letter memoranda submitted to this court in response to its request for briefing on the issue of appealability, AirLease, Greycas, and Swig expressed their belief that the remand of the case to the bankruptcy court and subsequent payment of some fee to Simon could transform this Chapter 11 reorganization into a Chapter 7 involuntary bankruptcy. Richard Uhl, the president of AirLease, testified to that effect in the hearing on Simon's petition for payment of administrative expenses, stating that, "if the available funds were hit as heavily as we are talking about here today ... there would be no basis for a plan of reorganization." App. at 1343. As we stated In re Comer, 716 F.2d at 172, the fact that determination of the disputed issue may require conversion of the procedure from one under Chapter 11 to one under Chapter 7 demonstrated that, "[t]he matter ... is not one that can await final resolution of the bankruptcy proceedings."
 
 
 21
 The district court's remand of the portion of the bankruptcy court's order dealing with the amount of Simon's compensation does not affect our jurisdiction over the portion of its order approving Simon's nunc pro tunc employment.[4] In Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 101 (3d Cir.1981), we held that we could review the district court's determination in an adversary proceeding against the debtor with respect to ownership of a certain coal mine notwithstanding that the district court had remanded to the bankruptcy court for an accounting. See also In re Meyertech Corp., 831 F.2d at 414 (district court order remanding to the bankruptcy court for reconsideration of the amount and propriety of a favorable award in an adversary proceeding is appealable final order). In this case, as in those, "the judgment of the district court conclusively determined the question presented by this appeal." Universal Minerals, 669 F.2d at 101.[5] For these reasons, we conclude that the district court's order approving the nunc pro tunc employment of Simon is a final order,[6] and we turn to the merits of the appeal.
 
 III.
 Retroactive Approval
 A.
 
 22
 Our analysis of whether the bankruptcy court, as affirmed by the district court, properly approved Simon's appointment under section 327(a)[7] nunc pro tunc is informed in large measure by our recent decision in In re Arkansas, 798 F.2d 645 (3d Cir.1986), handed down after the bankruptcy court's decision in this case. In Arkansas, we held that "bankruptcy courts may, in extraordinary circumstances, grant retroactive approval of professional employment." Id. at 646 (emphasis added). We adopted a two-part test to determine the propriety of such retroactive approval: first, the bankruptcy court must find, after a hearing, that the applicant satisfies the disinterestedness requirements of section 327(a) and would therefore have been appointed initially; and, second, the court must, in the exercise of its discretion, determine that the particular circumstances presented are so extraordinary as to warrant retroactive approval. Id. at 650.
 
 
 23
 To guide the bankruptcy court in the exercise of its discretion regarding the existence of "extraordinary circumstances", we directed it to consider such factors as:
 
 
 24
 whether the applicant or some other person bore responsibility for applying for approval; whether the applicant was under time pressure to begin service without approval; the amount of delay after the applicant learned that initial approval had not been granted; the extent to which compensation to the applicant will prejudice innocent third parties; and other relevant factors.
 
 
 25
 Id.
 
 
 26
 Applying these factors in Arkansas, we upheld the district court's decision that no extraordinary circumstances justified the retroactive approval of attorneys for a creditors committee, where the attorneys were experienced in bankruptcy practice and had alleged no time pressure that would justify their failure to apply for approval, but simply, through oversight, had neglected to do so. Id. at 650-51. Noting that we had previously stated that the prior approval requirement is a "means of 'ensuring that the court may know the type of individual who is engaged in the proceeding, their integrity, their experience in connection with work of this type, as well as their competency concerning the same,' " id. at 648, (quoting In re Hydrocarbon Chemicals, Inc., 411 F.2d 203, 205 (3d Cir.) (in banc), cert. denied, 396 U.S. 823, 90 S.Ct. 66, 24 L.Ed.2d 74 (1969)), we concluded in Arkansas that "the prophylactic statutory rule that approval must be sought in advance of performance of services is too strong to be overcome by a mere showing of oversight." Id. at 651.
 
 
 27
 AirLease, Swig, and Greycas contend that Simon would not have met the requirements of section 327(a) for appointment of professionals even had approval of his appointment been sought in a timely fashion.[8] They argue that because Simon has a potential claim against AirLease arising out of his 1983 settlement agreement with AirLease's parent, he is not a "disinterested person" eligible for appointment under section 327(a).[9] Such a dispute demonstrates the congressional wisdom in requiring prior approval of professional persons with the attendant notice to creditors. Had prior approval been sought in this case, the issue of Simon's disinterestedness would have been brought out in the open during the hearing and resolved prior to his having performed the services for which he now seeks a fee. Because we conclude, after applying the relevant factors in this case, that there were no extraordinary circumstances to support his nunc pro tunc appointment, we do not reach the issue of Simon's disinterestedness.
 
 B.
 
 28
 The two factors enumerated in Arkansas of particular relevance here are who bore the responsibility for compliance with the statutory mandate that prior approval be sought from the court for employment of a professional and whether the applicant was under such time pressure to begin services that prior approval could not reasonably be sought. Simon argues that under the Bankruptcy Code and Rules AirLease bore the responsibility for seeking court approval of the appointment of professional persons, and that it was only through AirLease's oversight that the petition for approval was never filed. Although Bankruptcy Rule 2014(a) states, in relevant part, that "[a]n order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professional persons pursuant to Sec. 327 or Sec. 1103 of the Code shall be made only on application of the trustee or committee," this requirement cannot relieve the professional person who seeks appointment from responsibility to know that such approval is necessary and to insure that it has in fact been sought. See In re Carolina Sales Corp., 45 B.R. 750, 755 (Bankr.E.D.N.C.1985). Otherwise, the prior approval requirement of the Code could be avoided for all non-attorney professional persons merely by citing the debtor's oversight, with the attendant difficulty of determining whether it was inadvertent or not. To the extent that the bankruptcy court held that Simon, as a non-attorney, "cannot be held to be charged with the knowledge of this requirement," AirLease, 59 B.R. at 775, it committed legal error.
 
 
 29
 Simon is a sophisticated businessman who was represented by attorneys throughout the course of his dealings with AirLease. This is not a case in which a person, completely ignorant of the requirements of the Bankruptcy Code and without legal representation, justifiably relied on the superior expertise of another. See In re Freehold Music Center, Inc., 49 B.R. 293 (Bankr.D.N.J.1985). The evidence here suggests that Simon's attorney was familiar with the requirements of the Bankruptcy Code, including the requirements of section 327(a). In the November 28, 1984 letter written by his attorney to AirLease, Simon agreed to limit the request for court approval to the lease only, reserving questions "regarding the distribution or allocation of the proceeds from the Aloha Airlines lease." App. at 792. Even if Simon believed that AirLease had the responsibility for filing the application, we see no basis to relieve Simon from his obligation under section 327(a) to insure that the application was timely filed.
 
 
 30
 Simon argues that the second factor articulated in Arkansas--whether the applicant was under time pressure to begin services--supports the nunc pro tunc approval because Aloha Airlines needed the use of the plane for the 1984 Christmas season. The bankruptcy and district courts also found that Simon "operated under severe time pressures to locate another lessee for the aircraft." In re F/S AirLease II, Inc., 84 B.R. 389, 393 (W.D.Pa.1986). This finding reflects a misunderstanding of the "time pressure" factor, which relates solely to whether there is sufficient time to request court approval before the professional's services must begin.
 
 
 31
 Simon began negotiating with AirLease in July 1984 regarding his services and compensation therefor. AirLease declared bankruptcy on August 3, 1984. Simon first contacted Aloha in September 1984, and the approval of the lease was sought from the bankruptcy court in the end of November 1984. Simon did not seek the requisite prior approval from the court when AirLease's bankruptcy began, nor did he seek approval at any time during the four-month period in which he was performing his services. Not until June 3, 1985--almost a year from when he had commenced his services and a full seven months from the date he had concluded them--did Simon petition the court for payment of administrative expenses. The estate's need to have the plane expeditiously remarketed can hardly excuse Simon's extreme laxity in seeking approval.
 
 
 32
 The time pressures on which Simon and the courts below rely are simply not the sort of exigencies contemplated by Arkansas. In Arkansas we were referring to an emergency situation in which services had to be initiated within a very short period before approval could be sought. We cited, as an example, In re Bible Deliverance Evangelistic Church, 39 B.R. 768 (Bankr.E.D.Pa.1984), in which counsel was retained by a creditors committee only two weeks before a crucial meeting and was required to begin immediate preparation. Under these circumstances, the bankruptcy court found that counsel had acted with "reasonable promptness" in seeking court appointment within two weeks of being retained. 39 B.R. at 772. The facts of this case do not approximate the exigent time pressures presented in Bible, and, indeed, do not indicate that Simon was faced with any time pressure at all with respect to seeking the court's approval of his prospective services.
 
 
 33
 Simon contends that his appointment should be approved because of his successful efforts in securing the Aloha lease. The bankruptcy court stated, in a finding amply supported by the record, that, "[w]ere it not for the efforts of S-J [Simon] in obtaining this lease, there would be no estate with which a reorganization could be effected." 59 B.R. at 777.
 
 
 34
 In most cases in which nunc pro tunc approval has been sought, the applicant has performed services of value. To this extent, there will be some unjust enrichment if compensation is not authorized. Because that is the unavoidable consequence of the statutory requirement of prior approval, we agree with the statement by the court in In re Mason, 66 B.R. 297, 307 (Bankr.D.N.J.1986), that the "fact that the applicant's services were beneficial to the debtor's estate is immaterial to this court's decision regarding nunc pro tunc approval."
 
 
 35
 Simon treats the "prejudice" factor referred to in Arkansas as relating to prejudice vel non to any party from Simon's failure to seek prior approval. Simon and Greycas thus dispute whether Greycas, if permitted to do so by the bankruptcy court, could have performed equivalent services to Simon's at less cost. This issue is irrelevant because the statutory requirement of prior approval is not limited to those cases in which there would otherwise be prejudice. The "prejudice" factor to which we referred in Arkansas was only whether, in "extraordinary circumstances" cases, there would be prejudice if compensation were paid after nunc pro tunc employment were approved. Arkansas, 798 F.2d at 650. We do not reach that factor in this case because a review of the relevant factors shows that there is no evidence in this record of the "extraordinary circumstances" that would warrant nunc pro tunc approval of Simon's employment.
 
 IV.
 Simon's Additional Contentions
 
 36
 In addition to his contentions under section 327(a), Simon argues that nunc pro tunc approval is unnecessary because he is entitled to a fee for his brokerage services under either section 327(b) or 503(b)(1)(A) of Chapter 11 of the Bankruptcy Code, 11 U.S.C. Secs. 327(b), 503(b)(1)(A) (Supp. IV 1986).[10] We find both provisions inapplicable. Simon does not fall within section 327(b)[11] because he was not a "regularly employed ... professional person[ ] on salary."
 
 
 37
 We likewise reject Simon's argument under section 503(b)(1)(A) of the Code, which permits priority payment as an administrative expense of "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case." 11 U.S.C. Sec. 503(b)(1)(A). Section 503(b)(1)(A) encompasses costs such as outlays for repairs, upkeep, rent, taxes and "other costs incidental to protection and conservation" of the estate. 3 L. King, supra, para. 503.04, at 503-20.
 
 
 38
 The authority to pay administrative expenses for professionals, and a real estate broker, like an attorney, is a professional, is found not in section 503(b)(1)(A) but in section 503(b)(2) which permits payment as an administrative expense for "compensation and reimbursement awarded under section 330(a)." Section 330(a), in turn, empowers the court to award "reasonable compensation" to, inter alia, a "professional person employed under section 327." Because Simon is a professional person who was hired to "assist the [debtor-in-possession] in carrying out the [debtor-in-possession's] duties," see 11 U.S.C. Sec. 327(a), and he failed to comply with that section's requirement to obtain prior approval of his appointment, he cannot rely on section 503(b)(1)(A) as a way of circumventing section 327(a). See In re Mansfield Tire & Rubber Co., 65 B.R. 446, 465-66 (Bankr.N.D.Ohio 1986). If Simon were able to be compensated under section 503(b)(1)(A), it would render section 327(a) nugatory and would contravene Congress' intent in providing for prior approval.[12]
 
 V.
 Conclusion
 
 39
 We are mindful that the result may seem harsh in this case. In Arkansas, we explained our formulation of the "extraordinary circumstances" standard by reference to the legislative history and the important policies at stake. We noted that without such a standard, "the bankruptcy court may be overly inclined to grant such approval influenced by claims of hardship due to work already performed." 798 F.2d at 649. We stated that, "[i]f retroactive approval were freely granted, it would subvert the prophylactic purpose underlying the statutory requirement of prior approval." Id. Our holding in this case reiterates and reinforces that bright-line position.
 
 
 40
 The bankruptcy court did not have the benefit of Arkansas when it gave its nunc pro tunc approval, and hence did not apply the appropriate legal standard. The district court also erred as a matter of law because it misapplied the Arkansas factors. For the reasons set forth above, we will reverse the order of the district court affirming the bankruptcy court's order granting nunc pro tunc approval of Simon's employment and remand to the district court for the entry of an appropriate order consistent with this opinion.
 
 
 
 *
 Hon. Clarkson S. Fisher, Chief Judge, United States District Court for the District of New Jersey, sitting by designation
 
 
 [1]
 AirLease and Swig appeal from so much of the district court's order that affirms the bankruptcy court's nunc pro tunc approval; Greycas appeals from both the nunc pro tunc approval and the remand; and Simon cross-appeals from that portion of the order vacating the monetary award and remanding the case to the bankruptcy court
 
 
 [2]
 Section 158(d) of title 28 of the United States Code provides that:
 The courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) of this section.
 28 U.S.C. Sec. 158(d) (Supp. III 1985).
 Subsection (a) of section 158 provides, in turn, that:
 The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.
 28 U.S.C. Sec. 158(a) (Supp. III 1985). Subsection (b) of section 158, governing appeals from bankruptcy appellate panels, is not relevant here.
 
 
 [3]
 Prior to 1984, the jurisdiction of the courts of appeals in bankruptcy cases was governed by 28 U.S.C. Sec. 1293(b), (omitted by Pub.L. 98-353, tit. I, Sec. 113, 98 Stat. 333, 343 (1984)), which provided that courts of appeals had jurisdiction "from a final judgment, order, or decree of a bankruptcy court." This provision was superseded by section 158(d) when Congress enacted the Bankruptcy Amendments & Federal Judgeship Act of 1984, Pub.L. No. 98-353, tit. I, Sec. 104(a), 98 Stat. 333, 341 (1984), in response to the Supreme Court's decision in Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Because both statutes contain the finality requirement, this court has stated that Congress did not intend any substantive change when it enacted section 158(d), and, indeed, the legislative history reveals none. In re Pacor, Inc., 743 F.2d 984, 987 n. 4 (3d Cir.1984). We may therefore rely on cases decided under section 1293(b) to assess our jurisdiction under section 158(d). See In re Brown, 803 F.2d 120, 122 n. 3 (3d Cir.1986)
 
 
 [4]
 One authority has concluded that the issue of whether a court of appeals has jurisdiction over an order of the district court remanding to the bankruptcy court is "hopelessly unresolved." 1 L. King, Collier on Bankruptcy, para. 3.03 at 3-176 (15th ed. 1987) (citing cases). This case is unlike those where courts of appeals have dismissed appeals when the district court's remand to the bankruptcy court involved the development of "further factual findings related to a central issue raised on appeal." In re Stanton, 766 F.2d 1283, 1287 (9th Cir.1985) (citing In re Martinez, 721 F.2d 262, 265 (9th Cir.1983)); see also In re Vekco, 792 F.2d 744 (8th Cir.1986). Compare In re Bowman, 821 F.2d 245, 248 (5th Cir.1987) (finding no final order when remand involves "significant further proceedings") with In re Lift & Equipment Service, Inc., 816 F.2d 1013, 1016 (finding final order when remand involves "no more than a mechanical and ministerial task"), modified in part on rehearing, 819 F.2d 546 (5th Cir.1987)
 
 
 [5]
 The two instances in which we have dismissed appeals because the district court had remanded are, on close examination, inapposite here. In In re Jeanette Corp., 832 F.2d 43 (3d Cir.1987), the district court had affirmed the bankruptcy court's order that the debtor's attorney violated Fed.R.Civ.P. 11 and Bankruptcy Rule 9011 and remanded for a hearing to determine whether sanctions should be imposed. We dismissed the appeal because the "liberal construction" of finality in bankruptcy proceedings "does not apply in situations unrelated to the special needs of bankruptcy litigation." Id. at 45. In In re Brown, 803 F.2d 120 (3d Cir.1986), the district court had reversed the bankruptcy court's order that a creditor's letter violated the automatic stay of the Code and remanded for a determination of damages due the debtor. We explicitly predicated our dismissal of the appeal on the fact that the district court's order did not "affect the distribution of the debtor's assets or the relationship among the creditors." Id. at 123
 
 
 [6]
 Because of our resolution of the nunc pro tunc employment issue, we have no occasion to reach the issue of the amount of Simon's compensation, which is raised by the cross-appeals. Therefore, we do not decide whether we have jurisdiction over the cross-appeals
 
 
 [7]
 11 U.S.C. Sec. 327(a) (1982) provides that:
 Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.
 Under 11 U.S.C. Sec. 1107(a) (1982), AirLease, as a debtor in possession, has substantially the same rights, powers, functions, and duties of a trustee and is thereby entitled to employ professional persons under section 327(a).
 
 
 [8]
 In light of this argument, we find the position of appellants Swig and AirLease that Simon is entitled only to the $100,000 fee described in his letter of July 20, 1984 and July 30, 1984 truly mystifying. If Simon holds interests adverse to those of the estate, then he would not have been appointed under section 327(a), or alternatively, would not have qualified for retroactive appointment in any case and would not therefore be entitled to any fee whatsoever
 
 
 [9]
 11 U.S.C. Sec. 101(13)(A) (1982) defines "disinterested person" as a person who "is not a creditor." A "creditor" is a person who "has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. Sec. 101(9)(A). A claim includes a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. Sec. 101(4)
 
 
 [10]
 Neither the bankruptcy court nor the district court reached these issues, as they decided the case in Simon's favor pursuant to section 327(a)
 
 
 [11]
 11 U.S.C. Sec. 327(b) (Supp. IV 1986) provides, in full, that:
 If the trustee is authorized to operate the business of the debtor under section 721, 1202, or 1108 of this title, and if the debtor has regularly employed attorneys, accountants, or other professional persons on salary, the trustee may retain or replace such professional persons if necessary in the operation of such business.
 
 
 [12]
 Several of the parties have filed a series of motions to strike and for sanctions. We find each of these motions to be devoid of merit, especially in light of our disposition of this case, and will therefore deny them