In re FLEMING COMPANIES,
INC., et al., Debtors.

No. 03–10945 MFW.

United States Bankruptcy Court,
D. Delaware.

Jan. 29, 2004.

Christopher James Lhulier, Kathleen Marshall DePhillips, Laura Davis Jones, Paula Ann Galbraith, Scotta Edelen McFarland, Pachulski, Stang, Ziehl, Young, Jones & Weintraub, P.C., Scott D. Cousins, Victoria Watson Counihan, William E. Chipman, Jr., Greenberg Traurig LLP, Sheldon K. Rennie, Fox, Rothschild, O'Brien & Frankel, LLP, Wilmington, DE, for debtor.

Thomas C. Marconi, Losco & Marconi, Wilmington, DE, for petitioning creditor.

John Henry Knight, Richards, Layton & Finger, P.A., Wilmington, DE, for plaintiff.

Richard P.S. Hannum, Swartz, Campbell, Detweiler, Wilmington, DE, trustee.

Julie L. Compton, Office of the U.S. Trustee, Wilmington, DE, for U.S. Trustee.

Aaron A. Garber, David M. Fournier, Adam Hiller, Pepper Hamilton LLP, Wilmington, DE, Dennis Dunne, Derrick Talerico, Paul S. Aronzon, Susheel Kirpalani, Milbank Tweed, Hadley & McCloy, LLP, New York City, Kirk A. Kennedy, Kirkland & Ellis, Chicago, IL, for Official Committee of Unsecured Creditors.

## OPINION [1]

MARY F. WALRATH, Bankruptcy Judge.

Before the Court is the Debtors' Application for entry of an Order authorizing

---

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant

the Debtors' retention of Bain & Company ("Bain") as Turnaround Advisor nunc pro tunc to April 1, 2003, and the termination of Bain's retention nunc pro tunc to April 11, 2003 ("the Retention Application") and Bain's First and Final Application for Allowance of Compensation for Services Rendered and Reimbursement of Expenses ("the Fee Application"). The United States Trustee ("the UST") objected to both Applications. For the following reasons, we deny the Applications.

## I. *FACTUAL BACKGROUND*

In January 2002, Kmart Corporation ("Kmart") filed for relief under chapter 11 of the Bankruptcy Code in the Northern District of Illinois. At the time of its filing, Kmart was the Debtors' largest customer, accounting for approximately 20% of the Debtors' annual net sales of $3.6 billion. In February 2003, Kmart filed a motion to reject its supply agreement with Fleming.

Following Kmart's chapter 11 filing, the Debtors engaged Bain to perform turnaround advisory services, analyze company operations and create a post-Kmart business model. In addition, Bain provided consulting services to the Debtors related to post-merger integration of Core–Mark International and Head Distributing.

On April 1, 2003 ("the Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Following the Petition Date, counsel for the Debtors asked Bain to continue providing services during the early stages of the case. The Debtors and Bain negotiated a Termination Agreement whereby Bain agreed to provide transition services through April 11, 2003. During that period, Bain was to be paid $300,000 in fees and $30,000 in expenses.

to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested

On or about August 6, 2003 (more than 120 days after the Petition Date), the Debtors filed the Retention Application seeking authority to employ Bain as turnaround advisor to the Debtors nunc pro tunc to April 1, 2003, to approve the Termination Agreement and to pay Bain the agreed compensation. Contemporaneously, Bain filed the Fee Application.

On August 8, 2003, the UST objected to the Applications asserting that the nunc pro tunc relief sought was inappropriate and that the Fee Application failed to satisfy the Local Rules. In response, the Debtors and Bain assert that nunc pro tunc relief is appropriate under the Third Circuit's "extraordinary circumstances" test. Bain also contends that the Fee Application satisfies the Local Rules by providing sufficient detail of the services provided.

## II. *JURISDICTION*

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A), (B), (E) & (O).

## III. *DISCUSSION*

 Generally, the court must approve a debtor's retention of professionals in advance of services being performed. This provides notice to all parties in interest and an opportunity to object to the retention on necessity or conflict grounds. Prior approval ensures that the court knows the type of professional engaged, its integrity, its experience with this type of work and its competency. *In re Arkansas*, 798 F.2d 645, 648 (3d Cir.1986). Prior approval also ensures that the appropriateness of the professional's retention is resolved prior to its provision of services.

matters by Federal Rule of Bankruptcy Procedure 9014.

*See F/S Airlease, Inc. v. Simon (In re F/S Airlease II, Inc.)*, 844 F.2d 99, 106 (3d Cir.1988). As a result, debtors typically file retention applications on the first day of a case.

■ In some circumstances, however, prior retention is not possible due to the nature of the services to be performed. In those circumstances, approval may be granted in the discretion of the court. Such nunc pro tunc relief is, however, an extraordinary remedy. *See In re ICG Communications, Inc.*, 2001 WL 1820319, 2001 Bankr.LEXIS 1251 (Bankr.D.Del. Aug. 2, 2001).

■ In this Circuit, the bankruptcy court may grant retroactive approval only if it finds that it would have granted prior approval and that the delay in seeking approval was due to extraordinary circumstances beyond the professional's control. *Arkansas*, 798 F.2d at 650.

**A. *Prior Approval***

■ Accordingly, the Court must first determine whether Bain satisfies the Bankruptcy Code's requirements for approval of a professional: that the applicant be disinterested, not have an adverse interest and that the services to be performed are necessary under the circumstances. *See* 11 U.S.C. §§ 327(a), 1103(a).

■■ A disinterested person is someone who "is not a creditor, an equity security holder, or an insider." 11 U.S.C. § 101(14)(a). Although section 327(a) imposes a per se disqualification on any professional who has an actual conflict of interest, the court may not disqualify a professional on the appearance of a conflict alone. *In re Pillowtex, Inc.*, 304 F.3d 246, 251 (3d Cir.2002). Prior representation of the debtor does not, by itself, merit disqualification. *Id.* (citing 11 U.S.C. § 1107(b)).

■ Receipt of a preferential transfer, however, does constitute an actual conflict of interest requiring disqualification. *In re First Jersey Securities, Inc.*, 180 F.3d 504, 509 (3d Cir.1999). The receipt of a preference creates a conflict with unpaid creditors because a payment by an insolvent debtor to one creditor is necessarily paid at the expense of another creditor. *Pillowtex*, 304 F.3d at 252.

■ Bain contends that it is disinterested under section 327(a) because it has no connection with the Debtors, their creditors or any related parties. While admitting that it did receive various payments from the Debtors within ninety days of the Petition Date, Bain asserts that these payments were made in the ordinary course of business. (Omnibus Reply of Bain and Company, Inc. To Objections of Acting United States Trustee at fn. 9.) However, Addendum A to the Supplemental Affidavit of Mark Kovac submitted by Bain does not support its assertion that the March invoices were paid in the ordinary course of business between the parties. The prior practice of the parties was for payment to be made within three to four weeks of the invoice date. In contrast, the March invoices (totaling $1,071,858.76) were paid within one week of submission (on the day preceding the Petition Date). Therefore, the payment of these invoices appears to be outside the ordinary course of business. Accordingly, it is likely that Bain's retention would have been rejected due to the presence of an actual conflict. *See Pillowtex*, 304 F.3d at 252 (it is inappropriate for a bankruptcy court to approve the retention of professionals who received a preference).

Bain's actual conflict of interest is highlighted by another motion filed by the Debtors in this case. The Debtors are currently investigating payments made to

all creditors to determine whether they may be avoided under section 547(b). To facilitate this investigation, the Debtors seek certain documents evidencing payments made to vendors that are in Bain's possession. (Motion of Debtors and Debtors in Possession for the Production of Documents by Bain & Co. at ¶¶ 9 and 10).

The UST also objects to the Retention Application on the ground that the Debtors' estates derived no benefit from Bain's services. In particular, the UST asserts that the Bain retention was not appropriate because the Debtors' businesses were being prepared for sale or were sold shortly after the inception of these bankruptcy cases. Bain contends, however, that it performed significant services that enabled the Debtors to maintain and increase the value of the Debtors' assets which were sold.

Although Bain may be correct that it did provide value to the Debtors' estates, the "fact that the applicant's services were beneficial to the debtor's estate is immaterial to this court's decision regarding nunc pro tunc approval." *F/S Airlease*, 844 F.2d at 108 (quoting *In re Mason*, 66 B.R. 297, 307 (Bankr.D.N.J. 1986)).

### B. *Extraordinary Circumstances*

Even if a professional would have been retained had the application been timely filed, nunc pro tunc approval is limited to cases where extraordinary circumstances are present. *Arkansas*, 798 F.2d at 649. To find extraordinary circumstances "will require consideration of factors such as whether the applicant or some other person bore responsibility for applying for approval; whether the applicant was under time pressure to begin services without approval; the amount of delay after the applicant learned that initial approval had not been granted; the

extent to which compensation to the applicant will prejudice innocent third parties; and other relevant factors." *Id.* at 650. Mere inadvertence or oversight of counsel, however, does not constitute excusable neglect sufficient to relieve the parties of the consequences of their actions. *Id.*

Applying the *Arkansas* factors in *FS Airlease*, the Third Circuit rejected a nunc pro tunc retention request where the professional was a sophisticated businessman well aware of the requirements for prior bankruptcy approval. 844 F.2d 99. Although recognizing the time pressures to provide services in that case, the Court rejected the retention, in part, because the professional did not seek approval of his retention until seven months after he had completed his services and nine months after the petition date. *Id.* at 102. In this case, the delay was similar. The Retention Application was filed more than four months after the case was filed and services were completed.

Bain asserts, however, that extraordinary circumstances did exist preventing the timely filing of its Retention Application. Bain also contends that it should not be punished for the Debtors' failure to file the Retention Application sooner. Although sections 327 and 1103 provide that the Debtors are to file the Retention Application, the requirements of these sections cannot relieve the professional from insuring that its retention has in fact been sought. *F/S Airlease*, 844 F.2d at 107 (citing *In re Carolina Sales Corp.*, 45 B.R. 750, 755 (Bankr.E.D.N.C. 1985)). Neglect by Debtors' counsel in failing to file a timely application does not amount to extraordinary circumstances permitting nunc pro tunc retention. *Arkansas*, 798 F.2d at 650. Otherwise, the Code's prior approval requirement could be avoided for all non-attorney professionals merely by arguing that the debtor's

attorney was responsible. *Id.* Accordingly, Bain is not entitled to nunc pro tunc retention simply because of the failure of Debtors' counsel to timely file the Retention Application.

■ Bain also contends that nunc pro tunc retention is appropriate because it lacked bankruptcy experience and was not familiar with the formal retention procedures. We find that this is not sufficient. In fact, the Third Circuit has specifically rejected this argument. *F/S Airlease*, 844 F.2d at 106–07; *United Companies*, 241 B.R. at 527. While Bain attempts to distinguish these cases by asserting that it is not sophisticated, the requirements of the Bankruptcy Code cannot relieve professionals from knowing that approval is necessary. *Id.* Additionally, we disagree with Bain's assertions that it is not a sophisticated entity, like the professional in *F/S Airlease*, or a sophisticated bankruptcy professional, like Ernst and Young in *United Companies*. Bain is one of the world's leading global business consulting firms that has worked with more than 2,500 clients in virtually every industry since its founding in 1973. *See* www.bain.com/bainweb/About/for_the_ media.asp.

■ Even if we were to agree that Bain lacked sophistication, this would not be enough to excuse its failure to seek retention sooner. Addendum B to the Supplemental Affidavit of Mark Kovac establishes that Bain worked closely with the Debtors' law firm and bankruptcy advisory firm before and after the bankruptcy filing. Counsel for the Debtors are experienced law firms well aware of the need for prior approval of professionals. In this very case, the Debtors filed nine retention applications on or shortly after the case was commenced and while Bain was still providing services. Neither Bain, nor the Debtors, have offered any explanation for why the Bain Retention Application could not have been filed at that same time. Nor have they provided any explanation for the four month delay. Bain's assertion that time pressures existed at the time it provided services is insufficient. Even if this were true, these time pressures existed for a few days (Bain's services ended April 11, 2003). Given the sophistication of Bain and Debtors' counsel, the Retention Application should have been filed more promptly.

Applying the *Arkansas* and *F/S Airlease* decisions to this case, we find no extraordinary circumstances warranting the approval of Bain nunc pro tunc. While this result may seem harsh, without such a standard, "the bankruptcy court may be overly inclined to grant such approval influenced by claims of hardship due to work already performed." *F/S Airlease*, 844 F.2d at 109 (quoting *Arkansas*, 798 F.2d at 649.) Accordingly, we deny the Bain Retention Application.

### C. *Bain's Fee Application*

■ A professional seeking compensation from the bankruptcy estate may not be paid for work done prior to filing and allowance of his application of employment. *In re Bobroff*, 64 B.R. 308 (Bankr.E.D.Pa. 1986) (citing *In re Calpa Products*, 411 F.2d 1373 (3d Cir.1969)). Because we have denied the Bain Retention Application, we conclude that Bain cannot be reimbursed for the services provided by it to the Debtors. Accordingly, the Fee Application is denied.

### IV. *CONCLUSION*

For the foregoing reasons we deny the Bain Retention Application and Fee Application.