

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-23-2002

# In Re Pillowtex

Precedential or Non-Precedential: Precedential

Docket No. 01-2775

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"In Re Pillowtex " (2002). *2002 Decisions.* Paper 595.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/595

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

       Filed September 23, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-2775

IN RE: PILLOWTEX, INC.

PATRICIA A. STAIANO, the UNITED STATES TRUSTEE,
       Appellant

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 00-cv-04211)
District Judge: Hon. Sue L. Robinson

Argued June 10, 2002

Before: SLOVITER, ROTH and McKEE, Circuit Judg es

(Filed: September 23, 2002)

       Robert D. McCallum, Jr.
        Assistant Attorney General
       Joseph A. Guzinski
        Acting General Counsel
       P. Matthew Sutko
        Attorney, Office of General Counsel

       Anne Murphy (Argued)
       William Kanter
       United States Department of Justice
       Washington, D.C. 20530

        Attorneys for Appellant

       Eric D. Schwartz
       William H. Sudell, Jr.
       Morris, Nichols, Arsht & Tunnell
       Wilmington, DE 19899

       Fordham E. Huffman (Argued)
       David G. Heiman
       Jones, Day, Reavis & Pogue
       Columbus, OH 43215

       Gregory M. Gordon
       Daniel P. Winikka
       Jones, Day, Reavis & Pogue
       Dallas, TX 75201

        Attorneys for Appellees
       In Re: Pillowtex, Inc. and its
       Affiliated Debtors

John D. McLaughlin, Jr.
Pauline K. Morgan
Young, Conaway, Stargatt & Taylor
Wilmington, DE 19899

Fred S. Hodara (Argued)
Akin, Gump, Strauss, Hauer & Feld
New York, NY 10022

Attorneys for Appellee
Official Committee of Unsecured
Creditors

OPINION OF THE COURT

SLOVITER, Circuit Judge.

The U.S. Trustee appeals from the District Court's order authorizing the retention of Jones, Day, Reavis and Pogue ("Jones Day") as Pillowtex, Inc.'s Chapter 11 bankruptcy counsel. The U.S. Trustee argues that payments of fees by Pillowtex to Jones Day within the 90 days before bankruptcy may have constituted an avoidable preference and that the receipt of such a preference by Jones Day would constitute a conflict of interest with Pillowtex's

2

creditors and its bankruptcy estate. The U.S. Trustee maintains that because the Bankruptcy Code provides that debtor's counsel may not "hold or represent an interest adverse to the estate" or "an interest materially adverse to the interest of . . . any class of creditors," Jones Day may have been disqualified from serving as Pillowtex's bankruptcy counsel. Without ruling on the U.S. Trustee's preference allegation, the District Court approved Jones Day's retention on condition, proposed by Jones Day, that if Jones Day is determined to have received a preference, it return the amount of the preference to Pillowtex's bankruptcy estates and waive any resulting claim. On appeal, the U.S. Trustee argues that the District Court erred in authorizing Jones Day's retention as counsel without making a determination whether Jones Day received a preference and asks this court to remand and direct the District Court to make such a determination promptly.

I.

FACTS AND PROCEDURAL POSTURE

Pillowtex Corporation and its subsidiaries (referred to collectively as Pillowtex) manufacture pillows, blankets, towels and other textiles. Jones Day has represented and advised Pillowtex since 1996 in a variety of matters, including corporate, financial, securities, real property, litigation, environmental, intellectual property, labor, employee benefits and tax affairs. Prior to filing its

bankruptcy petition, Pillowtex retained Jones Day to assist it with contingency planning and bankruptcy preparation.

Pillowtex declared bankruptcy on November 14, 2000 by filing a petition under Chapter 11 of the Bankruptcy Code. At the time of filing, Pillowtex had approximately $1,000,000,000 in trade debt, about $750,000,000 in senior secured debt, and roughly $400,000,000 in subordinated debt. For fiscal year 1999, Pillowtex's gross revenues exceeded $1,500,000,000, and as of July 1, 2000 its assets were valued at approximately $1,700,000,000.

On November 16, 2000, Pillowtex filed an application with the Bankruptcy Court to retain and employ Jones Day as its bankruptcy counsel pursuant to section 327 of the Bankruptcy Code. Pillowtex also applied to retain other professionals to assist it in its restructuring, including KPMG LLP (KPMG) as an independent auditor and consultant. As part of Jones Day's retention application, Jones Day set forth the date and amount of each payment that Pillowtex made to the firm during the year immediately preceding the filing for bankruptcy. The disclosure by Jones Day showed that Pillowtex made the following payments to Jones Day for services rendered:

|          |                  |
|----------|------------------|
| 11/29/99 | $ 203,520.69     |
| 12/27/99 | 450,573.79       |
| 12/30/99 | 155,912.06       |
| 2/23/00  | 181,550.01       |
| 3/31/00  | 67,482.73        |
| 4/30/00  | 146,520.71       |
| 6/30/001 | 180,585.22       |
| 7/7/00   | 132,299.71       |
| 9/11/00  | 78,652.94        |
| 11/3/00  | 40,759.09        |
| 11/10/00 | 778,157.33       |
| 11/13/00 | 300,000.00 (retainer--approx. |
| $100,000 | toward pre-petition fees) |

The last payment listed, that on November 13, 2000, was made the day before Pillowtex filed its petition for bankruptcy and was a retainer of $300,000 for services rendered or to be rendered by Jones Day and for reimbursement of expenses.2 Including the applied portion

_____

1. In the Disclosure of Compensation that Jones Day filed as part of Pillowtex's retention application, Jones Day listed this payment as having been made on 6/30/99, but its placement in an otherwise chronological listing of payments suggests that date is a scrivener's error. In its brief, the U.S. Trustee lists the payment as having been made in the year 2000.

2. Although Jones Day initially represented that it had applied $100,000 of that retainer as payment of fees through November 13, 2000, it now explains that it inadvertently failed to transfer that sum from its trust

account into a non-trust account as of that date.

4

of the retainer, Pillowtex paid Jones Day $2,516,014 in the year before it declared bankruptcy. Of those payments $997,569.36 were made in the ninety days before Pillowtex filed its petition for bankruptcy.

The U.S. Trustee3 filed an objection to the application by Jones Day and KPMG for retention, arguing that both KPMG and Jones Day had received payments which constituted voidable preferences under section 547 of the Bankruptcy Code. According to the U.S. Trustee, Jones Day "received payments before the filing of the petition which were voidable as preferences . . . . As a result of these payments, Jones Day is not a disinterested person and cannot be retained to represent the debtors in possession [Pillowtex]." App. at 125. Eventually, the U.S. Trustee withdrew his objection to KPMG's retention pursuant to stipulation, but continues to press its objection as to Jones Day and requested a hearing.

Before the District Court, Jones Day argued that Pillowtex's payments to it "were substantially within the historical pattern of payments between Jones Day and the Debtors, which included wide swings in the timing of payments." App. at 133. Jones Day opposed the requested hearing, arguing that it was "not necessary or appropriate for the Debtors' estates to incur the time and expense of litigating the preference issue." App. at 133. It proposed instead that "if a preference action against the firm is initiated and a final order is entered determining that Jones Day in fact received a preference, Jones Day will return to the Debtors' estates the full amount of the preferential payment and waive any related claim." App. at 133. Jones Day noted that "the U.S. Trustee has previously adopted" the same approach "with respect to Debtors' accountants," KMPG, but "[i]nexplicably, the U.S. Trustee will not agree to this resolution with Jones Day." App. at 133.

The District Court did not definitively determine whether Jones Day had received a preference from Pillowtex.

_____

3. The reference is to the United States Trustee authorized to supervise the administration of bankruptcy cases in "[t]he judicial districts established for the States of Delaware, New Jersey, and Pennsylvania," 28 U.S.C. S 581(a)(3), also known as "Region 3."

5

Instead, the court adopted Jones Day's suggestion that it authorize the firm's retention on condition that if Jones Day was determined to have received preferential transfers, "Jones Day shall promptly return the same to[Pillowtex's] estate[ ] and waive any unsecured claim it has by virtue thereof." App. at 3. According to the District Court, "Subject

to the provisions of this Order, Jones Day does not hold or represent any interest adverse to the Debtors' estates and is a 'disinterested person,' as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code." App. at 2. The U.S. Trustee timely filed this appeal of the retention order.

The bankruptcy proceeding continued while this appeal proceeded. In the interim, no party has brought a preference action against Jones Day. The District Court ultimately confirmed Pillowtex's Second Amended Joint Plan of Reorganization by an order entered May 2, 2002. At oral argument before this court, Fred Hodara, an attorney for the Official Committee of Unsecured Creditors of Pillowtex which joined in Pillowtex's brief on appeal, agreed with the U.S. Trustee that under Pillowtex's confirmed plan of reorganization the unsecured creditors only receive pennies on the dollar for their claims.

II.

JURISDICTION AND STANDARD OF REVIEW

This is a core proceeding pursuant to 28 U.S.C. S 157(b)(2). The District Court exercised jurisdiction over this matter pursuant to 28 U.S.C. SS 157 and 1334. That court's determination of Pillowtex's application for retention of counsel is a final order, see, e.g., United States Trustee v. First Jersey Secs., Inc. (In re First Jersey Secs., Inc.), 180 F.3d 504, 508 (3d Cir. 1999), which this court has jurisdiction to review pursuant to 28 U.S.C. S 1291, see, e.g., In re Marvel Entm't Group, Inc., 140 F.3d 463, 470-71 (3d Cir. 1998). The confirmation of Pillowtex's plan of reorganization does not moot this appeal. See, e.g., Citicorp Venture Capital Ltd. v. Committee of Unsecured Creditors, 160 F.3d 982, 986 (3d Cir. 1998) (exercising jurisdiction

6

over appeal despite confirmation of a Chapter 11 plan); Michel v. Federated Department Stores, Inc. (In re Federated Department Stores, Inc.), 44 F.3d 1310, 1315-17 (6th Cir. 1995) (holding appeal not moot despite confirmation of plan because bankruptcy court had power on remand to deny pending fee requests and order disgorgement of previously awarded fees).

The U.S. Trustee has standing to appeal the retention order. The U.S. Trustee has statutory responsibility to monitor applications for retention of professional persons in bankruptcy cases, and, "whenever the United States trustee deems it appropriate, [to file] with the court comments with respect to the approval of such applications." 28 U.S.C. S 586(a)(3)(H). The relevant statute addresses the U.S. Trustee's standing by explicitly providing that"[t]he United States trustee may raise and may appear and be heard on any issue in any case or proceeding under this title." 11 U.S.C. S 307. See also United States Trustee v. Price Waterhouse, 19 F.3d 138, 141 (3d Cir. 1994).

Although Jones Day argues that it is significant that none of the parties in interest to the bankruptcy objected to its retention as counsel, the House Report to the legislation expanding and implementing the U.S. Trustee program on a national scale, embodied in 11 U.S.C. S 307, expressly puts the U.S. Trustee on the level of a party, as it states: "The U.S. Trustee is given the same right to be heard as a party in interest, but retains discretion to decide when a matter of concern to the proper administration of the bankruptcy laws should be raised." H.R. Rep. No. 764, 99th Cong., 2d Sess. 27 (1986), reprinted in 1986 U.S.C.C.A.N. 5227, 5240. See also In re Columbia Gas Sys. Inc., 33 F.3d 294, 296 (3d Cir. 1994). Accordingly, we proceed to consider the issues presented.

III.

DISCUSSION

We review a bankruptcy court's decision to approve an application for employment for abuse of discretion. See In re Marvel Ent'mt Group, Inc., 140 F.3d 463, 470 (3d Cir.

1998) ("An abuse of discretion exists where the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.") (quoting ACLU v. Black Horse Pike Reg'l Bd. of Educ., 84 F.3d 1471, 1476 (3d Cir. 1996)).

A debtor in possession, such as Pillowtex, may, with bankruptcy court approval, employ one or more attorneys to represent it and to assist it in fulfilling its duties. See 11 U.S.C. S 327(a). The attorneys selected may not be persons who "hold or represent an interest adverse to the estate," and must be "disinterested persons." Id. The Bankruptcy Code includes as a "disinterested person," someone who "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor . . . , or for any other reason." 11 U.S.C. S 101(14)(E). Prior representation of the debtor does not, of itself, merit disqualification. See 11 U.S.C. S 1107(b) ("[A] person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case.").

We have considered the statutory requirements for retention of counsel in several opinions. In In re BH & P, Inc., 949 F.2d 1300 (3d Cir. 1991), the bankruptcy court had disqualified counsel after finding that the law firm had an actual conflict of interest by representing both the trustee for the debtor in its chapter 7 proceeding and the two principals of the debtor who had also filed chapter 7 proceedings. In affirming the disqualification of counsel (as

well as the trustee), we stated that a conflict is actual, and
hence per se disqualifying, if it is likely that a professional
will be placed in a position permitting it to favor one
interest over an impermissibly conflicting interest. See id.
at 1315. We noted that, "[t]he term 'actual conflict of
interest' is not defined in the Code and has been given
meaning largely through a case-by-case evaluation of
particular situations arising in the bankruptcy context." Id.

We again considered the standards applicable to
retention of trustee's counsel in In re Marvel Entertainment

Group, Inc., 140 F.3d 463 (3d Cir. 1998). Because the
parties urged "conflicting interpretations of BH&P, we
expressly reiterat[ed]" our earlier holding that:

> (1) Section 327(a), as well as S 327(c), imposes a per se
> disqualification as trustee's counsel of any attorney
> who has an actual conflict of interest; (2) the district
> court may within its discretion -- pursuant toS 327(a)
> and consistent with S 327(c) -- disqualify an attorney
> who has a potential conflict of interest and (3) the
> district court may not disqualify an attorney on the
> appearance of conflict alone.

Id. at 476 (emphases added). In Marvel Entertainment, we
reversed the district court's disqualification of the trustee
and trustee's counsel because it was predicated only on the
appearance of a conflict. We held that under section 327(a)
the district court could disqualify counsel "only if it had an
actual or potential conflict of interest." Id. at 477.

Although the retention of counsel for the trustee was at
issue in both BH&P and Marvel Entertainment, the same
standards apply to the retention of counsel for the debtor in
possession. See 11 U.S.C. S 1107(a) ("Subject to any
limitations on a trustee serving in a case under this
chapter, and to such limitations or conditions as the court
prescribes, a debtor in possession shall have all the rights,
other than the right to compensation under section 330 of
this title, and powers, and shall perform all the functions
and duties, except the duties specified in sections
1106(a)(2), (3), and (4) of this title, of a trustee serving in a
case under this chapter.").

In In re First Jersey Securities, Inc., 180 F.3d 504 (3d Cir.
1999), the U.S. Trustee objected to retention of the counsel
proposed by the debtor in possession on the ground that
counsel had received a preferential payment, constituting
an interest adverse to the estate. Notwithstanding that both
the bankruptcy court and the district court had approved
counsel's retention, this court reversed. We stated that
"[w]here there is an actual conflict of interest . . .
disqualification is mandatory." Id. at 509 (citing In re
Marvel Entertainment, 140 F.3d at 476). Then, in language
that the U.S. Trustee here emphasizes, we stated that "[a]

preferential transfer to [debtor's counsel] would constitute an actual conflict of interest between counsel and the debtor, and would require the firm's disqualification." 180 F.3d at 509 (emphasis in original).

We held that counsel was disqualified because within 90 days of the filing for bankruptcy it had received from the debtor stock in payment of a bill of $250,000 in settlement for antecedent legal work. Counsel had argued that the stock payment was made in the ordinary course of business and therefore not subject to avoidance, but we rejected that contention because payment of fees in unregistered restricted securities was a method of payment inconsistent with the parties' prior course of dealings. See id. at 513. The U.S. Trustee relies on the authority of First Jersey Securities in pointing to Pillowtex's payment of substantial fees to Jones Day as a possible preference.

In this case, the District Court never decided whether Jones Day received an avoidable preference from Pillowtex when it accelerated billing for and received payment for past due bills during the ninety days before Pillowtex declared bankruptcy. An avoidable preference is defined in section 547(b) of the Bankruptcy Code as

> any transfer of an interest of the debtor in property -- (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was insolvent; (4) made -- (A) on or within 90 days before the date of the filing of the petition; . . . (5) that enables such creditor to receive more than such creditor would receive [in a Chapter 7 distribution]

11 U.S.C. S 547(b).

The preference rule prevents debtors from depleting the estate to pay favored creditors with assets that otherwise would have been apportioned among creditors according to the prioritization scheme of the Bankruptcy Code. See, e.g., George M. Treister et al., Fundamentals of Bankruptcy Law S 4.03(c), at 169 (noting that S 547 "is designed to achieve the policy of fostering equality of distribution among the creditors of an insolvent debtor"). When the debtor becomes insolvent, a payment to one creditor from the estate's

limited assets is necessarily paid at the expense of another creditor. The receipt of a preference by a creditor thus creates a conflict with unpaid creditors, whose share of the remaining assets is diminished by the payment.4

In this court, Jones Day explained that it sought payment from Pillowtex of its outstanding bills in order that it would not be a creditor at the time of the bankruptcy, as

that would have disqualified it from retention as counsel.5 The record does not show how much of the fee Jones Day received within the 90 days before bankruptcy was for bankruptcy preparation, how much was for legal work done years earlier, and what the ordinary practice was in Jones Day's billings to Pillowtex and Pillowtex's payments. Jones Day did not make a proffer of such information. Instead, it argued merely that a hearing was expensive and unnecessary, and proposed that the court could avoid any possible conflict by authorizing retention of Jones Day subject to the conditions that (1) Jones Day return any

_____

4. Section 327(a) sets forth two relevant standards for disqualification, one applicable to conflicts with the debtor's estate and one governing conflicts with other creditors. The first prohibits a professional from "hold[ing] or represent[ing] an interest adverse to the estate." 11 U.S.C. S 327(a). The second, contained in the definition of "disinterested person," requires that a professional be free of"an interest materially adverse to the interest of . . . any class of creditors." 11 U.S.C. S 101(14)(E). Thus, a professional may not have any conflict with the estate, while a conflict with creditors must be"material."

It is unclear whether, as the U.S. Trustee argues, the receipt of a preference will always create a conflict with the debtor. "Preference law . . . is not part of the arsenal of rights and remedies between a debtor and his creditors. . . . preference law focuses on relationships among creditors in light of the advantages of a collective proceeding, not on relationships between creditors and the debtor ." Thomas H. Jackson, Avoiding Powers in Bankruptcy, 36 Stan. L. Rev. 725, 757 (1984) (emphasis in original). We reserve the U.S. Trustee's argument for future resolution.

5. The Bankruptcy Code prohibits retention of a professional who is a prepetition creditor of the debtor. See 11 U.S.C. S 101(14)(A) (stating that a disinterested person "is not a creditor"); Price Waterhouse, 19 F.3d at 141. If Jones Day were determined to have received a preference, its resulting claim for fees would transform it into a prepetition creditor, which would pose a disqualifying conflict.

11

preference it is determined to have received, and (2) Jones Day waive any claim resulting from the preference.

We agree with the U.S. Trustee that the court's order incorporating the two conditions does not resolve the question whether Jones Day received an avoidable preference and was therefore not disinterested and whether it should have been disqualified. If payments to Jones Day were determined to be preferences, Jones Day would, in any event, be obliged to return the funds to the estate. See 11 U.S.C. S 550 ("[T]o the extent a transfer is avoided under section . . . 547 . . . of this title, the trustee may recover, for the benefit of the estate, the property transferred, or . . . the value of such property.").

Nor does its undertaking to waive the claims resulting from the preference resolve the issue of its possible

disqualification if the fee payment was an avoidable preference. Jones Day cites a series of cases to illustrate that a professional can eliminate an adverse interest by waiving any claim it has against the estate, but it is not in the same position as the professionals in these cases. See, e.g., In re Princeton Medical Mgmt., Inc. , 249 B.R. 813, 816 (Bankr. M.D. Fla. 2000); In re Fulgham Enters., Inc., 181 B.R. 139, 142 (Bankr. N.D. Ala. 1995); In re E. Charter Tours, Inc., 167 B.R. 995, 996 (Bankr. M.D. Ga. 1994); In re Adams Furniture Indus., Inc., 158 B.R. 291, 297 (Bankr. S.D. Ga. 1993); In re Watervliet Paper Co., Inc. , 96 B.R. 768, 774 (Bankr. W.D. Mich. 1989).

In each of the cited cases, the professional waived its fees prior to being approved for retention under section 327 (a). See, e.g., Princeton, 249 B.R. at 816 (noting requirement that retention be denied absent waiver); Fulgham , 181 B.R. at 142 ("Unless Mr. Beck waives his prepetition claim he may not be employed by the Debtor"); Charter , 167 B.R. at 998 (denying retention absent waiver); Adams, 158 B.R. at 297 (approving law firm's retainers in light of waiver); Watervliet, 96 B.R. at 774 (permitting retention as debtor's counsel upon waiver). Here, Jones Day has not actually waived any fees as there has been no determination that there was a preference and its amount, but Jones Day was retained nonetheless.

12

Jones Day points to the decision in In re Midland Food Servs., LLC, No. 00-4036 (Bankr. D. Del. Dec. 14, 2000) (oral order granting retention), where a bankruptcy court, despite a creditor's claim that the proposed counsel had been paid a preference, granted a retention petition by debtor's counsel based on a conditional waiver similar to that approved in the District Court's order in this case. The bankruptcy court permitted retention based on the court's conclusion that a conflict was only potential until the preference was definitively adjudicated. App. at 186, 189-90. That decision was not appealed to this court and appears to be inconsistent with the decision we reach today.

At the heart of the U.S. Trustee's objection to retention of Jones Day as counsel before the preference issue was decided is the improbability that Jones Day, as counsel to the debtor-in-possession, would bring an action against itself to recover any preference. As the U.S. Trustee states in its brief, "[b]ecause Jones Day has taken and retained payments that may be preferential and it 'will not be advising the Debtors to seek to recover payments made to Jones Day' . . . the conflict of interests, if any, has been in place since Jones Day's retention was approved and is an actual conflict of interest today." Appellant's Reply Br. at 6-7.

Jones Day responds that there are other creditors who could raise the preference issue, if it is a matter of concern. However, the relationship between a debtor and its

creditors is not always adversarial.6 In such a situation, the U.S. Trustee can play an important role in assuring adherence to the requirements of the Bankruptcy Code.

Of course, Jones Day does not concede that it received a preference. It argues that the $997,569.36 it received within the 90-day period was in the ordinary course of business, and therefore not an avoidable preference under section 547(c)(2). Moreover, it argues that any conflict

_____

6. See generally In the Matter of Arkansas Company, Inc., Debtor, 798 F.2d 645, 649 (3d Cir. 1986) (discussing conduct of some attorneys for creditors as one of bases for requirement of court approval of counsel for creditors committee).

13

created by that preference was not material, and notes that, "once a court concludes the debtor paid a preference to a professional, it must evaluate whether the preference creates an "interest materially adverse to the interest of . . . any class of creditors." S 101(14)(E). See note 4, supra. According to Jones Day, given the uncertainty over whether it was paid a preference, let alone a preference constituting a materially adverse interest to other creditors, the District Court was well within its discretion to order its retention.

It is true that "historically, bankruptcy courts have been accorded wide discretion in connection with . . . the terms and conditions of the employment of professionals." Appellee's Br. at 10 (quoting BH & P, 949 F.2d at 1316). Jones Day argues that therefore a court sitting in bankruptcy also enjoys considerable discretion in determining how to address an allegation of a conflict of interest.

Although a bankruptcy court enjoys considerable discretion in evaluating whether professionals suffer from conflicts, that discretion is not limitless. A bankruptcy court does not enjoy the discretion to bypass the requirements of the Bankruptcy Code. For example, we held in United States Trustee v. Price Waterhouse, 19 F.3d 138 (3d Cir. 1994), that, based on the language of the Code, a bankruptcy court that approves the retention of a prepetition creditor of the estate necessarily abuses its discretion. Id. at 141 ("These provisions[of the Bankruptcy Code], taken together, unambiguously forbid a debtor in possession from retaining a prepetition creditor to assist it in the execution of its Title 11 duties.").

At the oral argument, Jones Day contended that all bankruptcy lawyers find themselves with past due bills from putative debtors on the eve of bankruptcy and seek to clear the accounts so that they are qualified to serve as counsel for the debtor. It suggested that if this court were to hold that such payments may be avoidable preferences which must be determined before retention can be approved, we will disrupt the already hectic period after

bankruptcy filing when the bankruptcy court is occupied with first day orders and the parties are meeting to form creditors committees. We believe that some accommodation

14

can undoubtedly be made between the need of counsel for payment of appropriate fees and the explicit provisions of the Code. The U. S. Trustee agrees that counsel are entitled to receive fees for the bankruptcy preparation, although we reserve the issue how this can be done consistently with the provisions of the Code. The U.S. Trustee maintained before the District Court that "professionals entering bankruptcy cases protect themselves from the preference issue by obtaining a retainer, and they . . . draw down on the retainer during the 90 day period so as to avoid raising the issue of whether or not they received preferential payments." App. at 207. It also argues that many preference claims may be insubstantial and that bankruptcy counsel typically waive past fees due. The U.S. Trustee focuses on Jones Day's receipt of payments for past bills which enabled it to receive 100% of all past due bills rather than waiving those for earlier work. It argues that "[p]aying hundreds of thousands of dollars of accrued fees on the eve of bankruptcy was not typical." Appellant's Br. at 18-19.

The record does not show which view is accurate. The parties may choose to present evidence at the hearing on remand that would permit the District Court to make a finding of fact on the matter.

Because there has never been a judicial determination whether Jones Day received a preference, it is unclear at this time whether the preference, if there were one, presents a conflict which would require Jones Day's disqualification. We hold that when there has been a facially plausible claim of a substantial preference, the district court and/or the bankruptcy court cannot avoid the clear mandate of the statute by the mere expedient of approving retention conditional on a later determination of the preference issue.

The District Court in this case could not adequately evaluate the alleged conflict and was not in a position to conclude that any preference did not pose a conflict with Pillowtex's estate or a material conflict with the other creditors. We therefore agree with the U.S. Trustee that the

15

District Court must hold a hearing on whether Pillowtex received a preference, and will remand for that purpose.7

A True Copy:
Teste:

          Clerk of the United States Court of Appeals

_____

7. There was some confusion at oral argument about whether the U.S. Trustee has standing to pursue the preference action below. Although we leave the question to the District Court on remand in the first instance, we call to its attention our discussion in U.S. Trustee v. Columbia Gas Sys. Inc. (In re Columbia Gas Sys. Inc.), 33 F.3d 294 (3d Cir. 1994), where we observed of section 307 of the Code, "[i]t is difficult to conceive of a statute that more clearly signifies Congress's intent to confer standing." Id. at 296.

16