**NOT PRECEDENTIAL**

UNITED STATE COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-2800

_____

IN RE:  JADE MANAGEMENT SERVICES
d/b/a CROWN MOUNTAIN WATER SERVICES,

Appellant

_____

On Appeal from the
District Court of the Virgin Islands
No. 3-05-cv-00148
District Judge:  Honorable Curtis V. Gomez

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 4, 2010

Before:  SMITH, CHAGARES, and JORDAN, Circuit Judges.

(Filed:   July 9, 2010  )

_____

OPINION

_____

CHAGARES, Circuit Judge.

We review in this bankruptcy action an award of attorney's fees to Nancy D'Anna,

Esq., who for a time represented the appellant, Jade Management Services ("Jade"), as

debtor's counsel.  We will affirm.

I.

We write solely for the parties' benefit and, accordingly, give only a brief recitation of the facts. Jade owned certain real estate in the Virgin Islands while a sister corporation, Crown Mountain Water, Inc. ("CMW"), operated a business selling potable water extracted from wells located on Jade's property. In 1995, the two entities merged, retaining Jade's corporate name. On September 11, 2002, Jade filed a petition for bankruptcy protection under Chapter 11 of the Bankruptcy Code. The next day, Jeannie Benjamin, Jade's sole shareholder and its president and chief executive officer, filed an individual petition for bankruptcy protection under Chapter 13 of the Bankruptcy Code. D'Anna executed these two petitions as counsel representing both Jade and Benjamin.

On January 14, 2003, the Bankruptcy Court approved Jade's unchallenged application to employ D'Anna as debtor's counsel in its Chapter 11 case. Joint Appendix ("JA") 177. On August 15, 2003, Jade filed a proposed plan of reorganization, under which its assets would be sold and the proceeds applied to satisfy, in full, all secured claims and tax liens. Satisfaction of the unsecured claims, however, would be uncertain under the proposed plan.[1] JA 182-84. Although Benjamin had personally guaranteed some or all of Jade's secured debts, as a result of the proposed plan, she was never called

---

[1] One of the unsecured claims was based on a pending personal injury suit that had been brought against CMW by Alvin and Eleanor Whyte, in which the Whytes sought damages of approximately $1.6 million. JA 164. Jade contested the claim, asserting that the suit was without legal basis. JA 40. The suit ultimately settled for approximately $170,000. JA 107; 211-12.

2

upon to satisfy her guarantees, nor did she ever file a claim against Jade. The Bankruptcy Court confirmed the plan on July 8, 2004, and the asset sale was scheduled for February 15, 2005. JA 45, 204.

Four days before the sale was set to occur, Benjamin executed a stock purchase agreement with another entity, Ursula and The Eleven Thousand Virgins, LLC ("Ursula").[2] JA 48-62. The same day, Ursula filed an emergency motion in the Bankruptcy Court to stay the sale of Jade's assets in the Chapter 11 case. JA 45-47. Ursula represented that it had the immediate financial ability and intent to satisfy not only the secured claims and tax liens, but 100% of allowed unsecured claims as well. Upon the Bankruptcy Court's approval in Benjamin's Chapter 13 case, Ursula assumed control of Jade on February 15, 2005. On May 16, 2005, it filed a proposed amended plan of reorganization consistent with its stated intentions. JA 102-11. The Bankruptcy Court confirmed the proposed amended plan on October 5, 2005. JA 282-85.

In the interim, D'Anna filed an application for fees and expenses, in which she sought a total outstanding sum of $70,251.36 for legal services performed between September 9, 2002 and May 10, 2005. JA 68-101. On July 15, 2005, Ursula filed an

_____

[2] The stock purchase agreement was subject to the Bankruptcy Court's approval in Benjamin's Chapter 13 case, which the court did indeed approve. Solely for sake of clarity, we refer hereafter to "Jade" as the entity operating before Ursula assumed control, and we refer to the entity now challenging the fee award as "Ursula." We do so fully cognizant that the title of the reorganized debtor (and appellant here) remains "Jade Management Services."

objection to the fee application, asserting (1) that D'Anna had been improperly employed because she was not a disinterested person, and (2) that the fee request was unreasonable.

On September 8, 2005, the Bankruptcy Court held a hearing regarding the application for fees and expenses, after which it entered an order overruling Ursula's objections and approving the fee request. JA 243. Ursula appealed to the District Court of the Virgin Islands, which affirmed the award. JA 3-28. Ursula now appeals to our Court.[3]

## II.

### A.

Ursula argues first that D'Anna was ineligible for employment under 11 U.S.C. § 327(a), and is therefore ineligible to receive compensation for her services. Specifically, Ursula argues that D'Anna was not a "disinterested person" (as § 327(a) requires) because she simultaneously represented Jade in its Chapter 11 case and Benjamin in her Chapter 13 case, and because Benjamin had personally guaranteed Jade's secured debts. Consequently, Ursula contends, D'Anna operated under an actual conflict of interest – here, a material risk that she would elevate Benjamin's personal interests over those of

---

[3] The Bankruptcy Court had jurisdiction under 28 U.S.C. § 157. The District Court had intermediate appellate jurisdiction under 28 U.S.C. § 158(a). We exercise appellate jurisdiction under 28 U.S.C. § 158(d). We review the District Court's order de novo, and we apply the same standards that it was required to apply when reviewing the underlying decision by the Bankruptcy Court. In re Visual Indus., Inc., 57 F.3d 321, 324 (3d Cir. 1995).

Jade's secured creditors.  Accordingly, Ursula argues that D'Anna was improperly employed from the outset, thereby eliminating the Bankruptcy Court's discretion to award her fees.[4]

Section 327 permits a debtor-in-possession (here, Jade) to employ attorneys "that do not hold or represent an interest adverse to the estate, and that are disinterested persons[.]" 11 U.S.C. § 327(a).  The Bankruptcy Code defines a "disinterested person" as a person who:

> (A) is not a creditor, an equity security holder, or an insider; (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and (C) does not have an interest materially adverse to the interest of the estate or of <u>any class of creditors</u> or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14) (emphasis added).  Paragraphs (A) and (B) are inapplicable here; the question is whether D'Anna's concurrent representation of Benjamin and Jade in their respective bankruptcy cases caused D'Anna to have an interest that was materially adverse to, or created an actual conflict of interest with, Jade's secured creditors.

Under our precedents, "[§] 327(a) presents a <u>per se</u> bar to the appointment of a[n

---

[4] We review the Bankruptcy Court's decision to approve Jade's application to employ D'Anna for abuse of discretion.  <u>See</u> <u>In re Pillowtex, Inc.</u>, 304 F.3d 246, 250 (3d Cir. 2002).  "An abuse of discretion exists where the [Bankruptcy C]ourt's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact."  <u>In re Marvel Entm't Group, Inc.</u>, 140 F.3d 463, 470 (3d Cir. 1998) (quotations and citation omitted).

attorney] with an actual conflict, [but] gives the [Bankruptcy C]ourt wide discretion in deciding whether to approve the appointment of a[n attorney] with a potential conflict." In re Marvel Entm't Group, Inc., 140 F.3d 463, 477 (3d Cir. 1998); see also In re Pillowtex, Inc., 304 F.3d 246, 251-52 (3d Cir. 2002); In re First Jersey Sec., Inc., 180 F.3d 504, 509 (3d Cir. 1999) ("[Section] 327(a) mandates disqualification when there is an actual conflict of interest, allows for it when there is a potential conflict, and precludes it based solely on an appearance of conflict."); In re BH&P, Inc., 949 F.2d 1300, 1316-17 (3d Cir. 1991).

Distinguishing between potential and actual conflicts is a flexible enterprise, and necessarily is one that is governed by the factual niceties of each particular case. Generally, however, "a conflict is actual, and hence per se disqualifying, if it is likely that a professional will be placed in a position permitting [her] to favor one interest over an impermissibly conflicting interest." Pillowtex, 304 F.3d at 251 (citation omitted). Nevertheless, as we explained in BH&P, "denomination of a conflict as 'potential' or 'actual' and the decision concerning whether to disqualify a professional based upon that determination in situations not yet rising to the level of an actual conflict are matters committed to the bankruptcy court's sound exercise of discretion." 949 F.2d at 1316-17. See also In re Martin, 817 F.2d 175, 182-83 (1st Cir. 1987) ("The bankruptcy judge is on the front line, in the best position to gauge the ongoing interplay of factors and to make the delicate judgment calls which such a decision entails. . . . [E]ach situation must be judged

6

prospectively on its own merits. . . . [H]orrible imaginings alone cannot be allowed to carry the day. Not every conceivable conflict must result in sending counsel away to lick his wounds.").

We are convinced that the Bankruptcy Court did not abuse its discretion here. Under the particular factual circumstances of this case, there existed at most a potential conflict of interest inherent in D'Anna's concurrent representation of the debtor-in-possession and its sole shareholder who had guaranteed the debtor's secured debt. "Simultaneous representation of a debtor corporation and the controlling shareholders, although not a disqualifying conflict per se, becomes a basis to disqualify counsel when adverse interests either exist or are likely to develop." In re Plaza Hotel Corp., 111 B.R. 882, 890 (Bankr. E.D. Cal. 1990) (emphasis added; citations omitted); see also TWI Int'l, Inc. v. Vanguard Oil & Serv. Co., 162 B.R. 672, 675 (S.D.N.Y. 1994) ("[A]n attorney that represents a corporation in bankruptcy and its principal is not per se interested.") (citation omitted); In re Hurst Lincoln Mercury, Inc., 80 B.R. 894, 895 (Bankr. S.D. Ohio 1987) ("It is fundamental that simultaneous representation of a corporation and its sole stockholder is not in and of itself improper.") (citation omitted).

In this case, the value of Jade's encumbered assets far outpaced the value of the secured claims that Benjamin had guaranteed. Compare JA 41, 192-93 (appraised value of Jade's business approximately $1.2 million) with JA 39 (secured claims totaling $422,170). From the outset, it appeared substantially certain that all secured claims would

7

be satisfied in full, thereby diminishing or eliminating outright any potential tension between Benjamin and the secured creditors. And while it is not dispositive, we note that that likelihood ultimately came to fruition, for Benjamin filed no claims against the estate. Though a "court should generally disapprove employment of a professional with a potential conflict," there exists an exception to that general rule "where the possibility that the potential conflict will become actual is remote[.]" BH&P, 949 F.2d at 1316. We find no abuse of discretion in the Bankruptcy Court's determination that such a remote possibility existed here.

Ursula's reliance on Plaza Hotel undermines, rather than supports, its position. See Appellant Reply Br. at 6. There, the court explained that an "actual conflict generally exists where . . . owners-guarantors are being sued on their guarantees of the debtor corporation's debt." Plaza Hotel, 111 B.R. at 890 (emphasis added). But as we have said, that is not the case here, where there appeared to be no significant risk that Benjamin would ever be called upon to satisfy her guarantees. Our cases make clear that we eschew bright-line rules in the determination whether a given arrangement constitutes an actual or potential conflict of interest.

Our conclusion is further bolstered by the fact that Ursula did not so much as hint that it objected to D'Anna's dual representation until after the stock purchase agreement had been approved, after it had taken control of Jade, after it had submitted an amended proposed plan of reorganization, and after D'Anna had completed her representation. Cf.

8

In re Kliegl Bros. Universal Elec. Stage Lighting Co., 189 B.R. 874, 877 (Bankr. E.D.N.Y. 1995) (emphasizing importance of objecting to professional's employment under § 327(a) at earliest practicable time). Indeed, at the hearing, the Bankruptcy Court characterized Ursula's challenge to the fee application as little more than a post hoc attempt to decrease the purchase price for which it had bargained: "[I]t seems to me . . . that pursuant to the [stock purchase agreement], you've got to pay the administrative expenses, and now [you] don't like the administrative expenses." JA 229. We do not disagree with this assessment.[5]

Ursula's challenge places heavy reliance on D'Anna's failure to provide a complete statement pursuant to Federal Rule of Bankruptcy Procedure 2014. That rule effectuates § 327(a)'s disinterestedness requirement, and mandates that a debtor's application to employ the professional "be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." Fed. R. Bankr. P. 2014(a). In this case, D'Anna's verified statement represented only that she had "no prior relationship or connection with any creditor which would be adverse to the interest of the debtor," omitting her connection to Benjamin, who clearly was a party in interest. JA 148. Seizing

---

[5] We note further that, at the hearing regarding the fee request, the United States Trustee stated on the record that it too "ha[d] reviewed the application and . . . ha[d] no objection to the award of compensation requested." JA 237.

on the omission, Ursula argues that this is clear evidence of D'Anna's actual conflict of interest.

We are not persuaded. Under the rule, "[a]ll facts that <u>may</u> be pertinent to a court's determination of whether an attorney is disinterested or holds an adverse interest to the estate must be disclosed." In re Hathaway Ranch P'ship, 116 B.R. 208, 219 (C.D. Cal. 1990) (emphasis in original; citations omitted). "The duty is one of complete disclosure of all facts, and, if the duty is neglected, even innocently, the offender should stand no better than if the duty to disclose had been correctly performed." Plaza Hotel, 111 B.R. at 883. But again, from the outset, D'Anna's dual representation of Jade and Benjamin was known to all concerned. The matters were assigned to the same Bankruptcy Judge (Judge Cosetti), who regularly heard both matters together, establishing that he was well aware of D'Anna's connection to Benjamin. Indeed, Judge Fitzerald (to whom the cases were assigned after Judge Cosetti's retirement) recognized this fact explicitly: "I don't agree that [D'Anna's employment] was in error. Judge Cosetti clearly was aware of the facts in the case . . . at the beginning[,] when the appointment was approved[.]" JA 228. Consequently, as a result of her employment, D'Anna stood in no better position than she would have had she provided a more comprehensive Rule 2014 affidavit. Cf. Plaza Hotel, 111 B.R. at 883. At bottom, the record makes clear that the Bankruptcy Court was "[a]rmed with knowledge of all the relevant facts." Martin, 817 F.2d at 182.[6]

---

[6] Ursula also argues that the Bankruptcy Court should have rejected D'Anna's fee request because she fraudulently omitted her connection to Benjamin on her Rule 2014

10

We find no cause to disturb the Bankruptcy Court's order authorizing D'Anna's employment. Accordingly, we conclude that the court did not err in finding her eligible for compensation.[7]

B.

Ursula next argues that the Bankruptcy Court erred by awarding D'Anna the full amount of fees for which she applied because they were unreasonable. A court may award an attorney employed under § 327 "reasonable compensation for actual, necessary services rendered" or expenses incurred, but may not award compensation for "unnecessary duplication of services," or "services that were not . . . reasonably likely to benefit the debtor's estate[] or necessary to the administration of the case." 11 U.S.C. § 330(a)(1),

---

affidavit. For similar reasons, we reject this argument as well. Again, because the record plainly reveals Judge Cosetti's awareness of D'Anna's dual representation, there is no reason to believe that he would have rejected Jade's application to employ her even if a complete Rule 2014 statement had been filed. Moreover, aside from the omission in the Rule 2014 affidavit, Ursula has proffered no evidence intimating that D'Anna in any way attempted to defraud the court. While we certainly do not condone D'Anna's substandard affidavit, we cannot fault the Bankruptcy Court for failing to reject it as fraudulent.

[7] Given our resolution, we have no occasion to decide whether a bankruptcy court retains discretion under § 328 – which authorizes a court to award compensation where a professional becomes disinterested during his or her employment – to award compensation to a professional who is improperly employed under § 327(a). Compare In re Crivello, 134 F.3d 831, 836-39 (7th Cir. 1998) (holding that bankruptcy court has discretion to award fees under § 328 despite professional's improper employment under §327(a)) with In re Federated Dep't Stores, Inc., 44 F.3d 1310, 1319-20 (6th Cir. 1995) (holding that bankruptcy courts are not so authorized); cf. also U.S. Trustee v. Price Waterhouse, 19 F.3d 138, 142 (3d Cir. 1994) (stating in dicta that "we interpret [§] 328(c) to mean that if a non-'disinterested' professional person is improperly employed . . . the court may deny compensation and reimbursement").

11

(4). In addressing the fee request, the Bankruptcy Court was required to consider the following factors: (1) the time spent performing the services; (2) the rates charged; (3) whether the services were necessary to the administration of, or beneficial toward the completion of, the case; (4) whether the services were performed within a reasonable amount of time commensurate with the complexity or importance of the task(s) completed; (5) whether the attorney demonstrated skill and experience in the bankruptcy field; and (6) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in non-bankruptcy cases. 11 U.S.C. § 330(a)(3). We review for abuse of discretion, see In re Engel, 124 F.3d 567, 571 (3d Cir. 1997) (citation omitted), and we find none.

Ursula argues that D'Anna's work on the Whyte personal injury matter, see supra note 1, was duplicative of work performed by counsel for Jade's liability insurance carrier. Ursula paraphrases a letter from the insurance carrier to Jade, in which Ursula claims that the carrier advised Jade that it "need not expend any costs for its defense." Appellant Br. at 46. But the letter supports, rather than undermines, D'Anna's claim that her work on the Whyte matter was reasonable and necessary. The letter advised Jade that its policy limit was $100,000, and that Jade would not be covered to the extent a verdict was returned in excess of that amount. JA 156. Accordingly, the insurance carrier specifically suggested that Jade "may wish to retain the services of another counsel to protect [its] interests[] against a verdict in excess of policy limits." Id. The letter only advised that

Jade had no <u>obligation</u> to "assume any legal expenses" <u>if</u> it did not "wish to engage personal counsel." <u>Id.</u> That Jade opted to use D'Anna's additional services, consistent with the insurance carrier's suggestion, does not render the services duplicative. And, in fact, the settlement amount turned out to be greater than the $100,000 policy limit. JA 107, 211-12. Given these circumstances, it was plainly not an abuse of discretion to award D'Anna fees for work performed on the Whyte matter.

Ursula also challenges D'Anna's work in addressing certain technical defects in the 1995 merger between Jade and CMW. Specifically, several annual reports and corporate franchise taxes that the companies were required to file and pay apparently never were, and thus the Virgin Islands Government never formally processed the merger. Accordingly, D'Anna spent time addressing these defects in contemplation of the sale of the business to Ursula. JA 36 n.1; 162 n.1; 235-36. Ursula now argues that D'Anna's efforts to complete the merger caused it to assume the liability potentially accompanying the Whyte claim. Consequently, Ursula says, D'Anna's services were actually harmful, rather than beneficial, to the estate. D'Anna argues, conversely, that execution of the stock purchase agreement was contingent on Jade providing to Ursula a certificate of its good standing, which she says included proof of bona fide title to CMW's assets.

We need not parse the terms of the stock purchase agreement to resolve the issue. Irrespective of Jade's contractual obligations, it would be strange indeed to hold that curing deficiencies in official corporate paperwork submitted to the Government does not

13

in some sense benefit the corporation.  And we do not so hold.

The remainder of Ursula's challenge to the fee request amounts to little more than trifling objections to D'Anna's fee calculation.  Upon review, we find these objections (which, we note, Ursula failed to specify to the Bankruptcy Court, JA 231) to be without merit.  We decline to disturb the Bankruptcy Court's considered judgment.  See In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833, 845 (3d Cir. 1994) ("Because its time is precious, the reviewing court need only correct reasonably discernible abuses, not pin down to the nearest dollar the precise fee to which the professional is ideally entitled.") (footnote omitted).

III.

For the foregoing reasons, we will affirm the order of the District Court.